IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

ROBERT NEIL, in his capacity    )
as Trustee of the CSR,          )
Incorporated Employee Stock     )
Ownership Plan, et al.,         )
                                )
     Plaintiffs,                )
                                )
          v.                    )     1:16cv1227 (JCC/IDD)
                                )
JOHN FOSTER-BEY,                )
                                )
     Defendant.                 )
                                )

## M E M O R A N D U M  O P I N I O N

This case arises out of a struggle between the Board
and management of CSR, Incorporated ("CSR"). It is before the
Court now on the Motion for Preliminary Injunction [Dkt. 4]
filed by Plaintiffs CSR and Robert Neil, in his capacity as
Trustee of CSR's Employee Stock Ownership Plan. Also before the
Court is Plaintiffs' Motion to Strike Defendant's Opposition
[Dkt. Nos. 23, 29] as untimely. For the reasons that follow,
the Court will deny both Motions.

### I. Background

CSR is a "government contractor providing professional
and technical consulting services and research." Compl. [Dkt. 1]
¶ 7. Defendant joined CSR in 2008 as Project Director, and
within three years was promoted to Vice President of Operations.

On December 2, 2011, Defendant was elected as both CEO and sole member of CSR's Board of Directors.

CSR maintains an Employee Stock Ownership Plan — "a qualified, defined contribution, stock bonus (or combination stock bonus plan and money purchase pension) plan governed by ERISA" that owns "100% of the outstanding common stock of CSR." *Id.* ¶¶ 8-9.  The Plan is administered "for the exclusive benefit of eligible employees and their beneficiaries."  *Id.* ¶ 9.  On June 20, 2012, Defendant was appointed Trustee of the Employee Stock Ownership Plan, assuming the fiduciary duties appurtenant to that position.

In August of 2013, Defendant appointed Thomas Edgar and Neil to CSR's Board.  Cynthia Mardsen was added to the Board in January of 2016.  Of the four Board members, only Defendant served as both Board member and management.

Plaintiffs allege that, beginning in early 2015, Defendant's performance as President, CEO, and Trustee began to deteriorate.  Among other things, Defendant ceased keeping regular business hours and "failed to engage in the business development activities required of him as CEO."  Mot. for Prelim. Inj. [Dkt. 4] at 2.  After repeated warnings, the other Board members informed Defendant on September 12, 2016, that they intended to terminate him as President, CEO, and Board

2

member of CSR, and as Trustee of CSR's Employee Stock Ownership Plan.

Defendant asked that the other Board members reconsider. They responded with a "memorandum of understanding" setting forth "specific mandates for [Defendant] going forward" and providing for a six month probationary period. Mot. [Dkt. 4] at 3. Plaintiffs delivered this memorandum to Defendant on September 14, 2016. The Board also scheduled a meeting with Defendant to take place on September 19, 2016, to discuss the issue of Defendant's employment.

Before the second meeting, on September 16, 2016, Defendant wrote letters to two individuals – Garland Yates and James Hymen – offering them the positions on the Board then occupied by Edgar and Neil. Mistakenly believing that the Board membership terms of Edgar and Neil had expired, Defendant stated that the positions offered Yates and Hymen would commence the day of the scheduled Board meeting. Yates and Hymen accepted the appointments.

Defendant appeared late to the meeting on September 19, 2016, and rejected the Board's mandates. In particular, Defendant took issue with the requirement that he be present in the office for six hours a day, four days a week. As a result, the other Board members informed Defendant that they would terminate him from his various positions at CSR.

3

Defendant responded that he would not recognize the Board's authority to remove him because the membership terms of Edgar and Neil had expired the prior month.  The Board, however, had earlier voted unanimously to extend those members' terms to the end of September.  Reminded of this resolution, Defendant stated that he would not renew those Board members' terms when they expired at the end of September, and would use his position as Trustee to elect new Board members who would retain him.

On September 21, 2016, the other Board members sent Defendant a formal notice terminating him from his roles as President, CEO, and Board member of CSR. The notice included the caveat that it would not become effective while the parties attempted to reach an amicable resolution.  Shortly thereafter, it became apparent that no such resolution would be possible. On September 26, 2016, the other Board members notified Defendant that the earlier notice had become effective, and provided him with a separate notice purporting to terminate him as Trustee of the Employee Stock Ownership Plan.  The same day, the remaining Board members appointed Neil as interim successor Trustee of the Plan.

Defendant nonetheless continued to hold himself out as President and CEO of CSR, as well as Trustee of the Employee Stock Ownership Plan.  Plaintiffs allege that this has caused

4

confusion, damaging the company's business and with it the value of the Employee Stock Ownership Plan.

On September 28, 2016, Plaintiffs brought suit alleging that Defendant's actions violated his fiduciary duty under ERISA as Trustee of the Employee Stock Ownership Plan. Plaintiffs filed the instant Motion for a Preliminary Injunction contemporaneously with their Complaint, seeking an injunction holding that, pending the resolution of this case, (1) Defendant is no longer the CEO of CSR or the trustee of CSR's Employee Stock Ownership Plan, (2) Plaintiff Neil is the trustee of CSR's Employee Stock Ownership Plan, and (3) the sole members of CSR's Board of Directors are Neil, Edgar, and Marsden.

Two weeks after Plaintiffs filed suit, Defendant called a meeting of what he viewed as CSR's legitimate Board members – Yates and Hymen (his recent appointees), Mardsen, and himself.  Mardsen did not attend.  At the meeting, Defendant, Yates, and Hymen voted to rescind the Board's prior decisions terminating Defendant from his various positions at CSR.

## II. Legal Standard

A party seeking a preliminary injunction must demonstrate that (1) it is likely to succeed on the merits of its claim; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of hardships favors granting the injunction; and (4) the injunction is in the

public interest.  *Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013).  Injunctive relief is warranted only if all four factors are met.  *Id*. at 320-21.

There are two kinds of preliminary injunctions: prohibitory and mandatory.  "Prohibitory preliminary injunctions aim to maintain the status quo and prevent irreparable harm while a lawsuit remains pending."  *Id*. at 319.  A mandatory injunction, on the other hand, seeks relief beyond maintaining the status quo, and is generally "disfavored, and warranted only in the most extraordinary circumstances."  *Taylor v. Freeman*, 34 F.3d 266, 274 n.2 (4th Cir. 1994).

While Plaintiffs couch their requested injunction in prohibitory terms, they seek mandatory relief.  Plaintiffs ask that the Court "enter a preliminary injunction freezing the management of CSR and the CSR [Employee Stock Ownership Plan] as it was on September 26, 2016," at which point Defendant had ostensibly "been removed" from his various positions.  Mot. [Dkt. 4] at 10-11.  But the "status quo," where preliminary injunctions are concerned, is the "last uncontested status between the parties which preceded the controversy." *Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 378 (4th Cir. 2012).  Here, that was a point before the Board purported to remove Defendant from his various roles at CSR.  Plaintiffs' Motion is therefore

subject to the heightened standard applicable to motions seeking mandatory relief.

The Court notes as well that, as formulated by Plaintiffs, the requested remedy is not an injunction but a declaratory judgment clarifying the parties' legal relationship:

> Injunctions and declaratory judgments are different remedies. An injunction is a coercive order by a court directing a party to do or refrain from doing something, and applies to future actions. A declaratory judgment states the existing legal rights in a controversy, but does not, in itself, coerce any party or enjoin any future action.

*Ulstein Mar., Ltd. v. United States*, 833 F.2d 1052, 1055 (1st Cir. 1987). Phrased in injunctive terms, Plaintiffs appear to request an order removing Defendant from any position he might hold at CSR and installing Plaintiffs' desired management.

### III. Analysis

Plaintiffs' Motion presents two issues. The first is whether, based on the record now before the Court, the Board effectively removed Defendant from his various positions at CSR. The second is whether Defendant's actions responding to their efforts violated ERISA. The Court finds that the resolution of the first issue moots the second.

Defendant raises a number of procedural objections to the manner in which he was removed from his various positions at CSR. In particular, he claims that the Board did not terminate

7

him through "proper official 'board action'" at a "properly called and noticed meeting."  Opp. [Dkt. 21] at 20.

Pursuant to Section 4.3 of CSR's bylaws, "[t]he act of the majority of the directors present at a meeting at which a quorum is present shall be the act of the board of directors." Mot. Exh. A [Dkt. 4-2] at 4.  A Board meeting may be either a regular or special meeting.  *See id*. at 3-4.  A special meeting requires "written notice delivered to each director not less than three (3) days before such meeting."  *Id*. at 4.  A director waives the notice requirement by attending a meeting unless he or she does so "for the express purpose of objecting to the transaction of any business because the meeting is not lawfully called or convened."  *Id*.

Section 4.11 of CSR's Bylaws states that "[a] director may be removed by a majority vote of the remaining directors at a regular meeting of the board or a specially called meeting where the purpose is clearly published to all directors."  *Id*. at 5.  Similarly, section 5.2 provides that "[a]ny officer or agent elected or appointed by the board of directors may be removed by the board of directors whenever in its judgment the best interests of the Corporation will be served thereby."  *Id*. at 5-6.  Finally, Section 5.2 of CSR's Employee Stock Ownership Trust Agreement states that "[t]he Company may remove the Trustee by giving (30) days' advance written notice to the

Trustee, subject to providing the removed Trustee with satisfactory written evidence of the appointment of a successor Trustee and of the successor Trustee's acceptance of the trusteeship." Mot. Exh. B. [Dkt. 4-3] at 8.

Here, it is uncontested the other members of the Board apprised Defendant of their intent to terminate him from his various positions at CSR on September 12, 2016. Compl. [Dkt. 1] ¶ 23. The Board arranged to meet with Defendant five days later on September 17, 2016 to discuss the matter. *Id*. ¶ 25. Three days before that meeting, the other Board members sent Defendant a memorandum detailing the issues they intended to address at the meeting. Defendant appeared at the meeting without raising any objection to the notice afforded him. *Id*. ¶ 26. When Defendant refused to accede to the Board's terms, a majority of the Board members informed Defendant that they would terminate him from his various positions at CSR. *Id*. ¶ 27. Shortly thereafter, the Board members sent Defendant a formal notice memorializing that decision. *Id*. ¶¶ 31, 32.

It is not clear what else Defendant believes the Board was required to do. Defendant had notice of the date and topic of the special meeting held on September 17, 2016. Defendant received what amounted to a written agenda for the meeting three days in advance, and evidently exchanged emails about the meeting with the other directors. Even if this did not

9

constitute sufficient notice, per Section 4.3 of CSR's bylaws, Defendant waived any notice objection by attending the meeting without raising the issue.  At the meeting, a majority of the Board determined that, barring some agreement reached by their respective counsel, Defendant would be terminated from his various positions at CSR.  The Board later sent Defendant two written notices formalizing its decision.

CSR's governing documents do not include any of the additional formal requirements Defendant would have the Court imply.  They prescribe no magic words or rigid procedures the Board neglected.  Accordingly, the Court finds that the Board's actions described above were sufficient to terminate Defendant from his roles as President, CEO, and Board member.

Whether the Board effectively removed Defendant as Trustee of CSR's Employee Stock Benefits Plan, however, is another matter.  Defendant raises several additional arguments on this point.

Most of these may be dealt with in short order. Defendant, for example, claims that the Board did not take "proper official 'board action' to remove [him] as Trustee." Opp. [Dkt. 21] at 20.  But as discussed above, the decision to remove Defendant as Trustee was reached by a majority of the Board at a duly constituted meeting.  That is all Section 4.3 of

10

CSR's bylaws and Section 5.2 of CSR's Employee Stock Ownership Trust Agreement requires.[1]

Defendant argues further that the Board did not provide him "with 'satisfactory written evidence' required under the Trust Agreement" when removing him as Trustee.  Opp. [Dkt. 21] at 20.  But the only "written evidence" to which Defendant was entitled was "satisfactory written evidence of the appointment of a successor Trustee and of the successor Trustee's acceptance of the trusteeship."  Mot. Exh. B. [Dkt. 4-3] at 8.  The notice provided to Defendant on September 26 stated that it was "intended . . . to provide satisfactory written evidence of the appointment of a successor Trustee . . . Robert Neil, and, as indicated by his signature below, his acceptance of the position of Trustee."  Mot. Exh. E [Dkt. 4-2] at 4.  It is unclear what further evidence the Board should have provided.

Finally, Defendant takes issue with the Board's purported appointment of an "interim" Trustee, claiming that Plaintiffs have not shown this to be consistent with CSR's governing documents and ERISA.  Defendant, however, points to no

---

[1]     Defendant appears to take the position that a formal Board resolution was required to remove him from office.  But while CSR's bylaws do require a formal resolution to take some actions – for example, to set the compensation of directors (Section 4.8) or designate a committee (Section 4.9) – neither CSR's bylaws, nor the Trust Agreement, require a formal resolution for the Board to remove the Trustee.

provision of CSR's governing documents or ERISA suggesting that the Board was not allowed to appoint a Trustee with the intent to later replace him.  The Court's independent review has found no such provision.

Defendant does, however, raise a colorable objection with respect to the Board's decision to disregard the 30-day notice period contemplated in the Trust Agreement.  The members of the Board presented Defendant with a notice purporting to terminate him as Trustee on September 26, 2016.  *See* Mot. Exh. E [Dkt. 4-2] at 4.  The letter acknowledged that the Board was required to give Defendant 30 days advance notice before removing him from that position. *See id.*; *see also* Mot. Exh. B. [Dkt. 4-3] at 8.  It concluded, however, that "the Board [would] not accept any directions or instructions from [Defendant] purporting to be from a Trustee . . . during this thirty (30) day period."  Mot. Exh. E [Dkt. 4-2] at 4.  The Court can discern no legal basis for the Board's refusal to recognize Defendant as Trustee during the 30-day notice period.

It is clear why the Board included this statement. Defendant had informed the Board that when the membership terms of Edgar and Neil expired on September 30, 2016 – four days after Defendant received the notice – he would use his power as

Trustee to replace them with new Board members who would reverse the Board's decision and retain him.[2]

Defendant undoubtedly had the power to do so under normal circumstances. Section 2.4(d) of the Employee Stock Ownership Trust Agreement empowers the Trustee to "vote or exercise other rights with respect to any 'Company Stock' . . . in the Trust Fund at his discretion." Mot. Exh. B. [Dkt. 4-3] at 4. Indeed, CSR's articles of incorporation specifically contemplate that members of the Board "shall be selected . . . by the Trustee voting the shares of the Corporation's capital stock held in the [Employee Stock Ownership Plan]." Mot. Exh. A [Dkt. 4-2] at 3; *see also* Mot. Exh. C (Employee Stock Ownership Plan § 4.6(a)) [Dkt. 4-4] at 10.

The record indicates that Defendant followed through on his plan, appointing Yates and Hymen to the Board. Defendant then called a meeting of what he viewed as CSR's legitimate Board members – Yates, Hymen, Mardsen, and himself. At the meeting, Defendant, Yates, and Hymen voted to rescind the Board's prior decision terminating Defendant from his various positions at CSR.

---

[2]     The Court notes that Plaintiffs consistently refer to Defendant's decision to "terminate" Edgar and Neil as Board members. That is not accurate. The Board membership terms of Edgar and Neil expired upon a date previously set by a unanimous Board. Defendant, as Trustee, had no power to terminate members of the Board.

At first blush, it might appear that Defendant's plan succeeded.  As discussed above, however, Defendant was not then a member of the Board.  Defendant's counsel confirmed at the hearing on this matter that Defendant took no steps before the October 14th Board meeting to reinstate himself.  Moreover, Mardsen did not attend the meeting.  Assuming the appointments of Yates and Hymen were legitimate, there were still only two current Board members present.

CSR's bylaws specify that the Board consists of four members (Section 4.1), that a majority of the members constitutes a quorum (Section 4.3), and that Board actions require "a meeting at which a quorum is present" (Section 4.3). With only two Board members present, the meeting lacked the quorum necessary to transact CSR business.  This is so notwithstanding the empty seat on the Board, for "quorum provisions . . . ordinarily make irrelevant any vacancies in the remainder of the larger body." *New Process Steel, L.P. v. N.L.R.B.*, 560 U.S. 674, 685 (2010); *Cf. Robert's Rules of Order* § 3, p. 20 (10th ed. 2001) ("The requirement of a quorum is a protection against totally unrepresentative action in the name of the body by an unduly small number of persons").  Defendant's plan to reinstate himself therefore appears to have failed.

In light of the above, and based on the limited record now before the Court, the Court must conclude that Defendant's

term as Trustee of the Employee Stock Ownership Plan expired on October 26, 2016 – 30 days after receiving the notice of his termination from that position.  As such, it does not appear that he is presently employed in any capacity by CSR.  The Court must conclude further that the Board's appointment of Neil as Trustee is, at this point, effective.

This brings the Court to an issue which it reaches *sua sponte*.  *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("subject-matter delineations must be policed by the courts on their own initiative").  While Neil is likely now Trustee of CSR's Employee Stock Ownership Plan, the Court is unable to discern any legal basis for his claim to that status when the case was filed.

"[S]tanding must exist at the time suit is filed." *Equal Access Educ. v. Merten*, 325 F. Supp. 2d 655, 667 (E.D. Va. 2004).  Generally, only plan participants, beneficiaries, and fiduciaries, as well as the Secretary of Labor, have standing to bring a claim under ERISA for an alleged breach of fiduciary duty.  *See* 29 U.S.C. § 1132(a); *Yarde v. Pan Am. Life Ins.*, 67 F.3d 298, 1995 WL 539736, at *4-6 (4th Cir. 1995) (table).  As Neil was not Trustee at the time he filed suit, he did not fall

into any of these categories.  Accordingly, the Court will
dismiss him from the case.[3]

 While the Court finds – again, only provisionally, and
based on the present record – that Defendant is no longer
employed by CSR, and that Neil is now Trustee of CSR's Employee
Stock Ownership Plan, that does not mean than an injunction
should issue.  Rather, it tends to demonstrate that Plaintiff's
request for an injunction is largely moot.  The "coercive"
relief of a preliminary injunction, *Ulstein Mar., Ltd.*, 833 F.2d
at 1055, can do little good when the world appears largely as
the Plaintiff would like it to be and unlikely to change.

 Similarly, "plaintiffs seeking preliminary relief
[must] demonstrate that irreparable injury is likely in the
absence of an injunction." *Winter v. Nat. Res. Def. Council,
Inc.*, 555 U.S. 7, 22 (2008) (emphasis omitted).  It appears from
the record that Defendant has not only been removed from his
positions at CSR, but has largely been frozen out of CSR's day-
to-day business.  It is therefore not clear what injury
Plaintiffs' requested injunction might prevent.  While it may
injure CSR's business if Defendant continues to hold himself out
as representative of CSR, Plaintiffs' Motion does not request an
injunction restraining him from doing so. The Court finds that

---

[3] CSR is named as a plan fiduciary in Section 9.1 of the
Employee Stock Ownership Plan, and so has standing to bring suit
under ERISA.  *See* Mot. Exh. C [Dkt. 4-4] at 17.

it would be inappropriate to grant an injunction not fairly embraced by the relief Plaintiffs requested.

The Court's analysis is not altered by the appointments of Yates and Hymen to the Board.  While it is possible the Court may ultimately rule that their appointments violated ERISA, there is no indication in the record that their continued presence on the Board poses an imminent threat to the Plaintiffs' business.  Their apparent loyalty to Defendant does not, in itself, render them unable to fulfil their duties as Board members.

In light of the above, the Court finds that the requested injunction would not serve to prevent any likely injury.  Accordingly, Plaintiffs have not made the requisite showing that would justify a preliminary injunction.  *See Pashby*, 709 F.3d at 320-21.  Moreover, "[a]n injunction is not granted as a matter of course, and whether to grant the injunction still remains in the equitable discretion of the district court even when a plaintiff has made the requisite showing." *Bethesda Softworks, L.L.C. v. Interplay Entm't Corp.*, 452 F. App'x 351, 353 (4th Cir. 2011) (citations and alterations omitted).  The Court finds that the requested injunction is not equitably justified given that the current state of affairs could not – from Plaintiffs' perspective – be much improved by its issuance.

Finally, the Court will deny Plaintiffs' Motion to Strike Defendant's Opposition.  The Court is not unsympathetic – there appears to have been little reason for Defendant to delay a month, filing his Opposition long after the deadline. Certainly it did not aid the Court in its consideration of Defendant's arguments, and deprived Plaintiffs of a meaningful opportunity to rebut them.  Nonetheless, in light of the above, the Court finds that Plaintiffs were not so prejudiced by the Opposition's late submission that the Opposition should be struck from the docket.

### IV. Conclusion

For the foregoing reasons, the Court will deny both Plaintiffs' Motion for Preliminary Injunction and Plaintiffs' Motion to Strike.  The Court will further dismiss Plaintiff Robert Neil from this action.

An appropriate order will issue.

/s/

October 27, 2016                         James C. Cacheris
Alexandria, Virginia          UNITED STATES DISTRICT COURT JUDGE