IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

```
ROBERT NEIL, in his capacity   )
as Trustee of the CSR,         )
Incorporated Employee Stock    )
Ownership Plan,                )
                               )
     Plaintiff,                )
                               )
     v.                        )   1:16cv1227 (JCC/IDD)
                               )
JOHN FOSTER-BEY,               )
                               )
     Defendant.                )
                               )
```

### **M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant John Foster-Bey's Motion to Dismiss [Dkt. 49]. Defendant's Motion rests largely upon a single argument: that the Trustee of an Employee Stock Ownership Plan cannot, as a matter of law, violate ERISA by voting stock held by the Plan in a self-interested manner. For the reasons that follow, the Court rejects that argument and will deny Defendant's Motion.

### **I. Background**

The following allegations of fact from Plaintiff's Complaint are taken as true for purposes of Defendant's Motion. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

Plaintiff CSR, Incorporated is a "government contractor providing professional and technical consulting services and research." Compl. [Dkt. 1] ¶ 7. Defendant joined CSR in 2008 as Project Director, and within three years was promoted to Vice President of Operations. On December 2, 2011, Defendant was elected as both CEO and sole member of CSR's Board of Directors. *Id*. ¶¶ 18, 19.

CSR maintains an Employee Stock Ownership Plan — "a qualified, defined contribution, stock bonus (or combination stock bonus plan and money purchase pension) plan governed by ERISA" that owns "100% of the outstanding common stock of CSR." *Id*. ¶¶ 8-9. The Plan is administered "for the exclusive benefit of eligible employees and their beneficiaries." *Id*. ¶ 9. On June 20, 2012, Defendant was appointed Trustee of the Employee Stock Ownership Plan, assuming the fiduciary duties appurtenant to that position. *Id*. ¶ 19.

In August of 2013, Defendant appointed Thomas Edgar and Robert Neil to CSR's Board. Cynthia Mardsen was added to the Board in January of 2016. Of the four Board members, only Defendant served as both Board member and management. *See id*. ¶ 16.

Plaintiff alleges that, beginning in early 2015, Defendant's performance as President, CEO, and Trustee began to deteriorate. *Id*. ¶ 21. Defendant ceased keeping regular

2

business hours and failed to "perform the business development activities required of a CEO, and . . . bec[a]me, essentially, an absentee CEO." *Id.* After repeated warnings, the other Board members informed Defendant on September 12, 2016, that they intended to terminate him as President, CEO, and Board member of CSR, and as Trustee of CSR's Employee Stock Ownership Plan. *Id.* ¶¶ 22, 23.

Defendant asked that the other Board members reconsider. *Id.* ¶ 24. They responded with specific terms Defendant would be required to meet to retain his positions at the company. *Id.* ¶ 25. The Board also scheduled a meeting with Defendant to take place on September 19, 2016, to discuss the issue of Defendant's employment. *Id.*

Defendant appeared late to the meeting on September 19, 2016, and rejected the Board's mandates. *Id.* ¶ 26. In particular, Defendant took issue with the requirement that he be present in the office for six hours a day, four days a week. *Id.* As a result, the other Board members informed Defendant that they would terminate him from his various positions at CSR. *Id.* ¶ 27.

Defendant responded that he would not recognize the Board's authority to remove him because the membership terms of Edgar and Neil had expired the prior month. *Id.* ¶ 28. The Board, however, had earlier voted unanimously to extend those

3

members' terms to the end of September. *Id.* ¶ 29. Reminded of this resolution, Defendant stated that he would not renew those Board members' terms when they expired at the end of September, and would use his position as Trustee to elect new Board members who would retain him. *Id.* ¶ 30.

On September 21, 2016, the other Board members sent Defendant a formal notice terminating him from his roles as President, CEO, and Board member of CSR. *Id.* ¶ 31. The notice included the caveat that it would not become effective while the parties attempted to reach an amicable resolution. *Id.* Shortly thereafter, it became apparent that no such resolution would be possible. *See id.* ¶ 32. On September 26, 2016, the other Board members notified Defendant that the earlier notice had become effective, and provided him with a separate notice purporting to terminate him as Trustee of the Employee Stock Ownership Plan. *Id.* The same day, the remaining Board members purported to appoint Neil as interim successor Trustee of the Plan. *Id.* ¶ 32.

Defendant nonetheless continued to hold himself out as President and CEO of CSR, as well as Trustee of the Employee Stock Ownership Plan. *Id.* ¶ 43. Plaintiff alleges that this has caused confusion, damaging the business. *Id.* Defendant also appointed new Board members at the expiration of Edgar's and Neil's terms. *See id.* ¶ 36. He did so "purely in

4

retaliation and in his own self-interest, to prevent his own termination from his positions as President, CEO, member of the Board, and Trustee." *Id.* ¶ 34.

On September 28, 2016, Plaintiff brought suit alleging that Defendant's actions violated his fiduciary duty as Trustee of the Employee Stock Ownership Plan. Plaintiff sought a preliminary injunction, which this Court denied upon provisionally finding that Defendant had successfully been removed from his various positions at CSR, rendering injunctive relief unnecessary. Defendant later moved for a temporary restraining order seeking to prevent the removal of the Board members he had installed during his final days at CSR. The Court likewise denied Defendant's Motion. Finally, Defendant filed, and the Court denied, a premature Motion for Attorney's Fees. On November 29, 2016, Defendant filed the instant Motion to Dismiss [Dkt. 49] pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. Legal Standard

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; importantly, [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999) (citation omitted). In reviewing a motion to dismiss for

5

failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the plaintiff's favor. *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440 (citations omitted). Generally, the Court may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion. *See Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

### III. Analysis

Defendant first contends that the Court's ruling on Plaintiff's Motion for a Preliminary Injunction "fully resolves and moots all of the Complaint's claims for declaratory judgment and injunctive relief." Mem. in Supp. of Mot. [Dkt. 50] at 4. Not so. The Court's various findings in this case have been provisional and made on a limited record, and do not amount to declaratory relief. Moreover, a preliminary injunction "has different prerequisites and serves different purposes than a permanent injunction." *MercExchange, L.L.C. v. eBay, Inc.*, 500 F. Supp. 2d 556, 573 (E.D. Va. 2007). The Court's denial of Plaintiff's earlier Motion does not preclude his continued pursuit of permanent injunctive relief.

Defendant next argues that Plaintiff's Complaint fails to state causes of action for breach of fiduciary duty and self-dealing under ERISA and the common law. He contends that "it

6

cannot be held that a Trustee's exercise of his authority under the corporate Bylaws and the Trust Agreement to appoint board members can constitute . . . a breach of fiduciary duty or self-dealing." Opp. [Dkt. 50] at 2.

Here, Plaintiff alleges that its Board confronted Defendant after he became "an absentee CEO," failing to appear for work and to "perform the business development activities required of a CEO." Compl. [Dkt. 1] ¶ 21. Rather than address the Board's concerns, Defendant permitted the membership terms of two Board Members to lapse. He then used his position as Trustee to vote the shares of stock held by the company's Employee Stock Ownership Plan, replacing the Board members who held him accountable with members who would continue to retain his services notwithstanding his shortcomings. In short, Defendant is alleged to have used his power as Trustee to vote the stock held by the company's Employee Stock Ownership Plan in a wholly self-interested manner, to the detriment of the Plan and its beneficiaries. The Court has little difficulty concluding that this alleges a violation of Defendant's fiduciary duty under ERISA and the common law.

For purposes of ERISA, "a person is a fiduciary with respect to a plan to the extent . . . he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control

7

respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(i). "The statutory language plainly indicates that the fiduciary function is not an indivisible one. In other words, a court must ask whether a person is a fiduciary with respect to the particular activity at issue." *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 61 (4th Cir. 1992), *as amended* (July 17, 1992).

Under CSR's Employee Stock Ownership Trust Agreement, the Board acts as a Plan fiduciary, and serves as the only check on Trustee's administration of the Plan. *See* Mot. Exh. B [Dkt. 4-3] at 8. The Board plays an integral part in the management of the Plan and safeguards the interests of Plan participants and beneficiaries. Appointing Board members is therefore an act involving the "exercise[ ] . . . [of] discretionary authority or discretionary control respecting management of [the] plan or . . . its assets[.]" 29 U.S.C. § 1002(21)(A)(i); *see also Neil v. Zell*, 677 F. Supp. 2d 1010, 1029 (N.D. Ill. 2009), *as amended* (Mar. 11, 2010) ("Even if the right to vote a share is not a plan asset, the share itself is an asset, so voting that share must be 'management' of the asset."); *Mohler v. Unger*, No. C-3-90-284, 1994 WL 1860578, at *13 (S.D. Ohio Aug. 26, 1994) ("The power to appoint and remove plan fiduciaries identifies members of a board of directors as fiduciaries, requiring them to adhere to the ERISA standards."); 29 C.F.R. § 2509.08-2 ("The fiduciary

8

act of managing plan assets that are shares of corporate stock includes the management of voting rights appurtenant to those shares of stock.). Defendant therefore acted as a fiduciary when voting to appoint members of the Board.

Having determined that Defendant's alleged use of his position as Trustee to replace Edgar and Neil with loyal Board members implicated his fiduciary duty under ERISA, the Court turns to whether Defendant's conduct violated that duty. ERISA forbids a fiduciary to "deal with the assets of the plan in his own interest or for his own account." 29 U.S.C. § 1106(b)(1). Moreover, "[p]ursuant to the duty of loyalty, an ERISA fiduciary must 'discharge his duties . . . solely in the interest of the participants and beneficiaries.'" *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 356 (4th Cir. 2014) (quoting 29 U.S.C. § 1104(a)(1)).

"The fiduciary responsibility provisions [of ERISA] invoke the common law of trusts." *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 656 (4th Cir. 1996). Under the common law, "[i]t is the duty of the trustee in voting shares of stock to use proper care to promote the interest of the beneficiary." Restatement (Second) of Trusts § 193 (1959). A trustee is afforded latitude in pursuing this goal, and "if he does not abuse his discretion the court will not control him in voting . . . but he may be restrained by injunction or otherwise from

9

casting a vote which would violate his duty to the beneficiary." *Id*.

The law is, to some degree, unsettled as to when the trustee of an employee stock ownership plan violates his or her fiduciary duty by voting the plan's shares in a self-interested manner. Several district courts have held that "the voting of Plan-owned shares by the Plan's trustees [is] a fiduciary act under ERISA, and one which the trustees [are] bound to exercise in the sole interests of the Plan participants." *O'Neill v. Davis*, 721 F. Supp. 1013, 1015-16 (N.D. Ill. 1989); *see also Neil v. Zell*, 677 F. Supp. 2d 1010, 1028 (N.D. Ill. 2009), *as amended* (Mar. 11, 2010); *Newton v. Van Otterloo*, 756 F. Supp. 1121, 1127-28 (N.D. Ind. 1991). Accordingly, these Courts have held that a trustee who acts out of self-interest when voting shares held by a plan to maintain him or herself to corporate office violates ERISA. *See id*.

The Sixth Circuit, on the other hand, has adopted a somewhat more lenient approach. That Court has held that a trustee who votes plan shares to entrench him or herself in management, without more, does not violate ERISA. *See Grindstaff v. Green*, 133 F.3d 416, 425 (6th Cir. 1998). Citing the "the 'dual role' of directors and plan fiduciaries in the [employee stock ownership plan] context," the Sixth Circuit has found that some degree of self-interest is inherent and "the

10

mere voting of an [employee stock ownership plan]'s stock by incumbent directors to perpetuate their own incumbency [does not] constitute[ ] a breach of an ERISA fiduciary's duty in the handling of a 'plan asset.'" *Id*. at 424-25.[1]

All Courts to have considered the matter appear to agree, however, that a trustee's self-interested use of his or her voting power to determine the outcome of a corporate power struggle can violate the trustee's fiduciary duty under ERISA. *See id*. at 422-23; *O'Neill*, 721 F. Supp. at 1015-16; *Newton*, 756 F. Supp. at 1128-29; *Neil*, 677 F. Supp. 2d at 1029. Plaintiff alleges that the Board attempted to remove Defendant once he became "an absentee CEO," failing to appear for work and to "perform the business development activities required of a CEO." Compl. [Dkt. 1] ¶ 21. Plaintiff alleges further that, rather than agree to fulfil his obligations to the company, Defendant used his position as Trustee to replace two independent Board members with members who would retain him notwithstanding his shortcomings. Such an action goes well beyond run-of-the-mill

---

[1] The Sixth Circuit also held that the power to vote shares of an employee stock ownership plan is not a "plan asset" for purposes of ERISA. *See Grindstaff.* 133 F.3d at 425. As observed in *Neil*, 677 F. Supp. 2d at 1028, however, this should not impact the fiduciary duty of the trustee, because "[e]ven if the right to vote a share is not a plan asset, the share itself is an asset, so voting that share must be 'management' of the asset." Regardless, the Court finds the Sixth Circuit's analysis unpersuasive for the reasons set forth in *Neil*, 677 F. Supp. at 1029.

11

entrenchment in management. *See Grindstaff*, 133 F.3d at 424-25. Rather, if proven, these allegations would clearly demonstrate that Defendant failed to "'discharge his duties . . . solely in the interest of the participants and beneficiaries.'" *Tatum*, 761 F.3d at 356 (quoting 29 U.S.C. § 1104(a)(1)). Similarly, it would show that Defendant "deal[t] with the assets of the plan in his own interest or for his own account." 29 U.S.C. § 1106(b)(1). The Court therefore rejects Defendant's argument that "that a Trustee's exercise of his authority under the corporate Bylaws and the Trust Agreement to appoint board members can[not] constitute . . . a breach of fiduciary duty or self-dealing." Opp. [Dkt. 50] at 2.

Finally, Defendant argues that "Plaintiff's claims that Foster-Bey breached his fiduciary duties at President, CEO, board member, and Trustee are supported by mere conclusory statements rather than actual alleged facts." Rep. [Dkt. 61] at 2. As discussed above, Plaintiff has alleged that Defendant (1) ceased appearing in the office on a regular basis, (2) failed to undertake the business development activities required of his position, (3) refused to address these concerns when raised by independent Board members, objecting even to the requirement he be present at the office for six hours a day, four days a week, and (4) replaced independent Board members with new Board members loyal to him solely out of a self-interested desire to

12

retain his job without amending his behavior. To survive a motion to dismiss, a plaintiff need only allege "sufficient facts . . . to support an inference that plaintiff is entitled to the relief he seeks." *Searls v. Sandia Corp.*, No. 1:14CV578 JCC/TCB, 2014 WL 7157431, at *2 (E.D. Va. Dec. 15, 2014). In light of the above, Plaintiff has done so.

## IV. Conclusion

For the foregoing reasons, the Court will deny Defendant's Motion to Dismiss [Dkt. 49]. An appropriate order will issue.

|  |  |
|---|---|
| January 10, 2017<br>Alexandria, Virginia | /s/<br>James C. Cacheris<br>UNITED STATES DISTRICT COURT JUDGE |