IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

CSR, INCORPORATED, in its corporate    :
capacity and in its capacity as fiduciary of   :
the CSR, Incorporated Employee Stock   :
Ownership Plan,   :
  :
      Plaintiff,   :     Civil Action No. 1:16cv1227-JCC
  :
v.   :
  :
JOHN FOSTER-BEY,   :
  :
      Defendant.   :

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF CSR'S MOTION TO DISMISS THE AMENDED COUNTERCLAIM

COMES NOW Plaintiff/Counter-Defendant CSR, Incorporated ("CSR"), in its corporate

capacity and as named fiduciary of the CSR Employee Stock Ownership Plan, by counsel, and

hereby submits this Memorandum of Points and Authorities in support of its Motion to Dismiss

the Amended Counterclaim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### Introduction

On September 26, 2016, CSR terminated Defendant/Counter-Plaintiff John Foster-Bey

("Foster-Bey") as President, CEO and Board Member, and also gave notice that he was being

removed as the Trustee of the CSR Employee Stock Ownership Plan ("ESOP"). On September

28, 2016, CSR filed its Complaint after Foster-Bey refused to recognize CSR's termination of

him and continued to hold himself out as President, CEO and Director of CSR, as well as Trustee

of the ESOP. In its Complaint, CSR seeks relief for declaratory judgment regarding Foster-

Bey's status, or lack thereof, at CSR, and also seeks relief stemming from Foster-Bey's breach of

LAW OFFICES
BEAN, KINNEY & KORMAN
A PROFESSIONAL CORPORATION
2300 WILSON BOULEVARD, 7TH FLOOR
ARLINGTON, VIRGINIA, 22201

fiduciary duty, self-dealing and violations of ERISA. All of CSR's claims have survived Foster-Bey's Motion to Dismiss.

On January 4, 2017,[1] after months of litigation and several representations to the Court that the pleading was imminent, Foster-Bey filed a Counterclaim against CSR. (Countercl., ECF No. 63.) The Counterclaim contained several allegations that were published in violation of a prior settlement agreement and confidentiality clause. (*See id.* ¶¶ 14-15.) After CSR's counsel alerted Foster-Bey' counsel of the improper allegations, Foster-Bey agreed to file an amended counterclaim without the offensive allegations.

On January 23, 2017, Foster-Bey filed the Amended Counterclaim (Am. Countercl., ECF No. 68.) Although the Amended Counterclaim contains 208 paragraphs and purports to allege five counts, the claims essentially boil down to a single allegation: namely that CSR did not terminate Foster-Bey in accordance with the CSR Bylaws and ESOP Trust Agreement. Foster-Bey's Amended Counterclaim fails to state a claim against CSR, and the Motion to Dismiss should be granted.

### Relevant Facts Alleged in the Amended Counterclaim

In 2011, Foster-Bey became the CEO and President of CSR, and also the ESOP Trustee, and by 2012, Foster-Bey became a member of the Board. (Am. Countercl. ¶ 8, ECF No. 68.) In 2013, Foster-Bey appointed Thomas Edgar ("Edgar") and Robert Neil ("Neil") to the Board. (*Id.* ¶ 16.) In 2015, Cynthia Marsden ("Marsden") was also appointed to the Board. (*Id.*) As of March 9, 2016, Foster-Bey's term on the Board was scheduled to run through September 30,

---

[1] Despite this Court's order that Foster-Bey's Answer be filed by January 3, 2017, the Answer and Counterclaim were filed on January 4, 2017, as evidenced by this Court's ECF system. CSR recognizes the Answer and Counterclaim as being untimely filed, without leave of Court, on January 4, 2017.

2017, and Neil's and Edgar's terms on the Board were scheduled to run through September 30, 2016. (*Id.* ¶ 17, Ex. D.)

In April, 2015, Foster-Bey suffered an illness and began missing work for extended periods of time. (*Id.* ¶¶ 23-28.) Neil and Edgar, concerned that Foster-Bey would not be able to fulfill his obligations as CSR President, suggested that Foster-Bey retire considering all the time from work Foster-Bey acknowledged he would miss. (*Id.* ¶ 16.) By Fall, 2016, Neil, Edgar and Marsden raised concerns with Foster-Bey that he was not developing enough business for CSR. (*Id.* ¶ 37.)

On September 7, 2016, Edgar, as Board Chair, called a special meeting. (*Id.* ¶ 47.) On September 8, 2016, presumably concerned that the Board might terminate him, Foster-Bey asked counsel for CSR about the "process for dissolving the current CSR Board and replacing them?" (*Id.* ¶ 55; Ex. M.) CSR's counsel declined to provide personal legal advice to Foster-Bey and recommended that Foster-Bey seek independent counsel. (*Id.*) On September 12, 2016, the Board held a meeting, where the Board was "prepared to terminate" Foster-Bey because of perceived failures to sufficiently develop business and other related deficiencies. (*Id.* ¶¶ 38, 57-65, 69; Ex. C.) On September 13, 2016, the Board issued a "Memorandum" to Foster-Bey regarding "President/CEO Performance Standards" and outlined certain expectations for Foster-Bey if he were to continue working for CSR. (*Id.* Ex. C.) Although the Memorandum provided a timeline for which Foster-Bey was to meet such expectations, the Board made clear that it may terminate Foster-Bey at an earlier date, if necessary. (*Id.*) The Memorandum stated that the Board intended to further address these issues at the next meeting, scheduled for September 19, 2016. (*Id.*)

Immediately after the September 12, 2016 meeting, and receipt of the September 13 Memorandum, Foster-Bey attempted to appoint two new Board members – Garland Yates ("Yates") and James Hyman ("Hyman"). (*Id.* ¶ 75.) On September 18, 2016, Foster-Bey issued letters to Neil and Edgar stating that Foster-Bey was not going to "reappoint" them to the CSR Board. (*Id.* ¶ 82; Ex. H.) Foster-Bey admittedly forgot that he personally signed a Board Resolution extending Neil's and Edgar's terms through September 30, 2016. (*Id.* ¶ 84; Ex. D.)

On September 19, 2016, the Board held a meeting as contemplated in the September 13, 2016 Memorandum. (*Id.* ¶¶ 77-81, 85-86; Ex. C.) At the meeting, CSR and Foster-Bey were both represented by counsel. (*Id.* ¶¶ 85-86.) Notably, neither Foster-Bey nor his counsel raised any objection regarding any purported deficiencies of notice for the September 19, 2016 meeting. (*See id.* ¶¶ 85-89.) The parties' respective counsel agreed to engage in discussions to attempt to resolve the ongoing dispute, but the Board had previously made clear that otherwise it intended to terminate Foster-Bey from CSR. (*Id.* ¶ 86; Exs. C, E.)

On September 21, 2016, when it became clear that no resolution could be reached, CSR, through counsel, sent its Notice of Termination to Foster-Bey as President, CEO and Board Member. (*Id.* ¶ 96, Ex. E.) The Termination was conditioned on the parties' ability to reach an agreement. (*Id.*, Ex. E.) On September 26, 2016, CSR issued Foster-Bey its Notice of Termination as Trustee of the ESOP, and also advised Foster-Bey that the September 21, 2016 Notice of Termination was effective as of September 26 because discussions between counsel did not resolve the ongoing dispute. (*Id.* ¶¶ 110-111, Ex. E.[2])

---

[2] Exhibit E to the Amended Counterclaim does not contain the September 26, 2016 E-mail from Charles Thomas or the September 26, 2016 Notice of Termination, though it is referenced in the pleading. For a full and complete record, and for the Court's review, true and accurate copies of both the Sept. 21 and 26 E-mails with attached Notices of Termination are attached hereto as **Exhibit 1.**

CSR's Bylaws provide that "[t]he act of the majority of the directors present at a meeting at which a quorum is present shall be the act of the board of directors." (*Id.*, Ex. A, at 4.) CSR has both regular and special board meetings. (*Id.* at 3-4.) Under the Bylaws, a special meeting requires "written notice delivered to each director not less than three (3) days before such meeting." (*Id.* at 4.) A director waives any notice requirement by attending a meeting unless he does so "for the express purpose of objecting to the transaction of any business because the meeting is not lawfully called or convened." (*Id.*)

Under the Bylaws, a CSR Board Member "may be removed by a majority vote of the remaining directors at a regular meeting of the board or a specially called meeting where the purpose is clearly published to all directors." (*Id.* at 5.) Relatedly, "[a]ny officer or agent elected or appointed by the board of directors may be removed by the board of directors whenever in its judgment the best interests of the Corporation will be served thereby." (*Id.* at 5-6.) The ESOP Trust Agreement simply provides that CSR "may remove the Trustee by giving (30) days' advance written notice to the Trustee, subject to providing the removed Trustee with satisfactory written evidence of the appointment of a successor Trustee and of the successor Trustee's acceptance of the trusteeship." (*Id.* Ex. B at 8.) Other than the foregoing, CSR's governing documents do not prescribe any "magic words," "rigid procedure," or other "formal requirements" for termination or removal of Foster-Bey. (*See id.*, Exs. A, B.)

After Foster-Bey refused to recognize his termination, CSR[3] filed suit on September 28, 2016, and also filed a Motion for Preliminary Injunction. On October 27, 2016, after argument by counsel, the Court issued a Memorandum Opinion finding, albeit provisionally, that Foster-

---

[3] Foster-Bey consistently claims that the "Outside Directors" sued Foster-Bey and that the "Outside Directors" accuse Foster-Bey of wrongdoing. (*See* Countercl. ¶¶ 4-5.) The "Outside Directors" are not parties to this action.

Bey is not presently employed in any capacity at CSR. (*Id.* ¶ 127-128; Oct. 27, 2016 Mem. Op. at 15, ECF No. 34.) The Court also provisionally recognized Yates and Hyman as Board Members as of October 27, 2016. (Countercl. ¶ 127; Oct. 27, 2016 Mem. Op. at 17, ECF No. 34.) Yates and Hyman were removed from the CSR Board on or about November 22, 2016. (Countercl. ¶¶ 130-136.)

Since Foster-Bey's termination, CSR has followed standard operating procedure and prohibited Foster-Bey from accessing CSR's confidential files and information, and has not permitted Foster-Bey to communicate with CSR personnel regarding CSR's business. (*Id.* ¶¶ 142-144, 149-152.) CSR has also refused to pay Foster-Bey's personal legal fees from the ESOP related to his defense of CSR's ERISA claims. (*Id.* ¶¶ 155-156.)[4] Based on the foregoing, Foster-Bey now asserts five claims: (1) declaratory judgment; (2) injunction; (3) breach of contract – Bylaws; (4) breach of contract – Trust Agreement; and (5) Indemnification.

The gravamen of the Amended Counterclaim is that CSR did not follow the notice procedure in the Bylaws or Trust Agreement in terminating Foster-Bey. On October 27, 2016, the Court provisionally held that CSR *did* comply with its corporate governance documents and effectively terminated Foster-Bey in all capacities as of October 26, 2016. (Oct. 27, 2016 Mem. Op. at 15, ECF No. 34.) In fact, the Court has stated in several orders throughout the litigation that Foster-Bey is no longer employed by CSR. (*See* Dec. 9, 2016 Or. at 3, ECF No. 59; Nov. 23, 2016 Or. at 1-2, ECF No. 47; Oct. 27, 2016 Mem. Op. at 15, ECF No. 34.) The relevant allegations in the Amended Counterclaim are consistent with the record before the Court for the October 27, 2016 hearing. Foster-Bey has alleged no new facts since this Court ruled on October 27, 2016. CSR properly terminated Foster-Bey, and the Motion to Dismiss should be granted.

---

[4] The Court has already ruled on this matter in its December 9, 2016 Order. (Dec. 9, 2016 Or., ECF No. 59.)

## Standard of Review

It is well-established that a "Rule 12(b)(6) motion[] tests the legal sufficiency of a complaint." *Thomaz v. It's My Party, Inc.*, No. 1:13cv00009, 2013 U.S. Dist. LEXIS 50979, at *11 (E.D. Va. Apr. 9, 2013) (citing *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)). The Court "must accept well-pleaded allegations as true and must construe factual allegations in favor of the plaintiff." *Thomaz*, 2013 U.S. Dist. LEXIS 50979, at *11 (citing *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994)). When considering a motion to dismiss, "the Court may consider documents integral to and explicitly relied on in the complaint if the plaintiff does not challenge their authenticity." *Thomaz*, 2013 U.S. Dist. LEXIS 50979, at *11 (citing *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)). "Where a conflict exists between 'the bare allegations of the complaint and any attached exhibit, the exhibit prevails.'" *Smith v. Purnell*, No. 1:11cv922, 2011 U.S. Dist. LEXIS 141738, at *13 (E.D. Va. Dec. 9, 2011) (quoting *United States ex rel. Constructors, Inc. v. Gulf Ins. Co.*, 313 F. Supp. 2d 593, 596 (E.D. Va. 2004) (citations omitted)).

To defeat a motion to dismiss, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Thomaz*, 2013 U.S. Dist. LEXIS 50979, at *11 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corpr. v. Twombly*, 550 U.S. 544, 570 (2007)). The complainant must provide more than "labels and conclusions," and the Court "is not bound to accept as true a legal conclusion couched as a factual allegation." *Thomaz*, 2013 U.S. Dist. LEXIS 50979, at *12 (citations omitted).

**Argument**

I.      **Foster-Bey Fails to State a Claim for Declaratory Relief.**

In Count I, Foster-Bey seeks twelve declaratory judgments from the Court, all of which are improper. Specifically, Foster-Bey asks the Court for an order declaring the following: (a) Foster-Bey did not engage in self-dealing and did not breach any fiduciary duties; (b) the CSR Board acted *ultra vires* and in violation of the Bylaws and Trust Agreement when it removed Foster-Bey from CSR; (c) Neil was not properly appointed Trustee; (d) Yates and Hyman remain members of the Board; (e) CSR's removal of Yates and Hyman were *ultra vires* acts by the Board; (f) any action taken by Neil as Trustee was *ultra vires* and has no effect; (g) the current members of the Board are Hyman, Yates, Marsden, and Foster-Bey; (h) CSR shall indemnify Foster-Bey his legal fees and costs; and (i) Foster-Bey has no liability to CSR. (Am. Countercl. at 42-43, ECF No. 68.) Foster-Bey's prayer for relief is tantamount to a Christmas wish-list. Foster-Bey's requested relief cannot be awarded under the Federal Declaratory Judgment Act, and Count I should be dismissed.[5]

a.  **The Declaratory Judgment Act**

The "Declaratory Judgment Act is not an independent source of jurisdiction and requires an actual case or controversy before a court may declare the 'rights and other legal relations of any interested party seeking such declaration.'" *WTGD 105.1 FM v. SoundExchange, Inc.*, 88 F. Supp. 3d 580, 584 (W.D. Va. 2015) (quoting 28 U.S.C. § 2201(a)). "To determine if a declaratory action is justiciable, the court must consider whether the facts alleged under 'all the circumstances' demonstrate 'a substantial controversy, between parties having adverse legal

---

[5] It is true that CSR also seeks declaratory relief in its Complaint; however, CSR merely seeks an order declaring that Foster-Bey was properly removed from CSR, and as such his actions taken post-termination are null and void ab initio. (Compl. at 10, ECF No. 1.) CSR's declaratory relief, notably, is not duplicative of the remaining counts in the Complaint. (*See id.*)

interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *WTGD*, 88 F. Supp. 3d at 584 (quoting *MedImmune, Inc. v. Greentech, Inc.*, 549 U.S. 118, 127 (2007)).

### b. Foster-Bey's Request for Declaratory Judgment Serves No Useful Purpose.

The Court should dismiss Count I in its entirety because it is superfluous and serves no useful purpose. Foster-Bey's allegations and requested relief under Count I mirror the remaining counts in the Amended Counterclaim. Courts have regularly dismissed similar declaratory judgment claims, which simply seek to adjudicate existing claims. *Hardnett v. M&T Bank*, No. 3:15cv622, 2016 U.S. Dist. LEXIS 118072, at *19-21 (E.D. Va. Aug. 31, 2016) ("Courts have repeatedly recognized that a declaratory judgment serves no useful purpose when it seeks only to adjudicate . . . already existing claims") (granting motion to dismiss declaratory relief count where the pleading contained "substantive claims that address the same conduct as the request for declaratory relief") (quoting *Metra Indus., Inc. v. Rivanna Water & Sewer Auth.*, No. 3:12cv49, 2014 U.S. Dist. LEXIS 21568, at *2 (W.D. Va. Feb. 19, 2014)); *see also Seneca Ins. Co. v. Shipping Boxes I, LLC*, 30 F. Supp. 3d 506, 511-12 (E.D. Va. 2014); *Newton v. State Farm Fire & Cas. Co.*, 138 F.R.D. 76, 79-80 (E.D. Va. 1991) (dismissing declaratory judgment claim because the declaratory judgment would serve no useful purpose in clarifying the contractual issues before the court).

Foster-Bey's claim for declaratory judgment should also be dismissed because several requests under Count I are simply denials of CSR's affirmative claims for breach of fiduciary duty, self-dealing, and violations of ERISA. Counterclaims disguised as defenses or denials under a request for declaratory judgment are improper and should be dismissed. *See Tyler v. Cashflow Techs., Inc.*, No. 6:16cv00038, 2016 U.S. Dist. LEXIS 152936, at *18 (W.D. Va. Nov.

3, 2016) (granting motion to dismiss as to declaratory judgment counterclaims where the requested relief was "merely defenses characterized as counterclaims") (citing *Cont'l Cas. Co. v. Fuscardo*, 35 F.3d 963, 966 (4th Cir. 1994); *Penn Mutual Life Ins. Co. v. Berck*, no. DKC 09-0878, 2010 U.S. Dist. LEXIS 86025, at *3 (D. Md. Aug. 10, 2010)). Accordingly, Count I should be dismissed.

### c. The Relief Sought Under Count I is Not Ripe for Adjudication

Notwithstanding that Count I serves no useful purpose, much of Foster-Bey's requested relief is not justiciable because it concerns non-parties to the litigation. For instance, Foster-Bey seeks a declaration from the Court regarding Yates', Marsden's, and Hyman's status on the CSR Board, and further seeks a judgment regarding alleged, non-specific acts allegedly taken by Neil as the successor Trustee. (Countercl. at 42 (5)-(9), ECF No. 63.) Yates, Marsden, Hyman and Neil are not parties to the dispute, and therefore, there is not an actual controversy involving these four individuals that the Court can adjudicate.

Count I, at least with respect to the non-parties, should be dismissed. *See HDP Sellers Representative, LLC v. Oceans Acquisition, Inc.*, No. 14-491, 2016 U.S. Dist. LEXIS 32846, at *11 (M.D. La. Mar. 14, 2016) (dismissing request for declaratory judgment because the claim sought relief concerning non-parties); *see also Amco Ins. Co. v. DRS Realty Co.*, No. 15-10725, 2016 U.S. Dist. LEXIS 18859, at *8 (E.D. Mich. Feb. 17, 2016) (declining to issue a declaratory judgment aimed at non-parties); *Colony Nat'l Ins. Co. v. Control Bldg. Servs.*, No. 14cv5651, 2015 U.S. Dist. LEXIS 155757, at *24-25 (D.N.J. Nov. 18, 2015) (ruling that declaratory judgment action is "inappropriate" as it seeks to define the rights of non-parties, and therefore would "violate the rule against non-party issue preclusion") (citing *Taylor v. Sturgell*, 553 U.S. 880, 884 (2008) (citations omitted)); *Martinez v. Res. Bank, FSB*, No. 1:09cv1112, 2009 U.S.

Dist. LEXIS 111620, at *12 (E.D. Va. Nov. 30, 2009) (dismissing declaratory judgment action where there was not an actual controversy).[6]

### d. Foster-Bey's Remaining Requests for Declaratory Relief are Untimely and Should be Dismissed.

Foster-Bey's remaining requested relief is equally inappropriate and untimely. "[D]eclaratory judgments are designed to declare rights so that parties can conform their conduct to avoid future litigation, and are untimely if the questionable conduct has already occurred or damages have already accrued." *Mabutol v. Fed. Home Loan Mortg. Corp.*, No. 2:12cv406, 2013 U.S. Dist. LEXIS 42685, at *7-8 (E.D. Va. Mar. 25, 2013). Similarly, "a declaratory judgment is 'unavailable in situations where . . . claims and rights asserted have fully matured, and the alleged wrongs have already been suffered.'" *Hanback*, 94 F. Supp. 3d at 758 (quoting *Trull v. Smolka*, No. 3:08cv460, 2008 U.S. Dist. LEXIS 70233, at *8 (E.D. Va. Sept. 18, 2008)). Understandably, when "a breach of contract has allegedly occurred and damages have already accrued, 'there is no guidance' that can be offered via a declaratory judgment to steer 'conduct away from a breach of contract.'" *Hanback*, 94 F. Supp. 3d at 758 (dismissing declaratory judgment claim where the "alleged breach of contract and damages . . . have already occurred") (quoting *The Hipage Co., Inc. v. Access2Go, Inc.*, 589 F. Supp. 2d 602, 615 (E.D. Va. 2008)).

Foster-Bey plainly requests relief from claims that he alleges have already accrued. For example, in Count I, Foster-Bey seeks an order declaring that his "declining to appoint Neil and Edgar to new terms" and "appointing Hyman and Yates to the CSR Board does not constitute self-dealing or a breach of his fiduciary duty." (Am. Countercl. at 41, ECF No. 68.) Similarly, Foster-Bey explicitly seeks an order that the CSR Board violated the Bylaws and Trust

---

[6] CSR alternatively requests that the Court dismiss Count I pursuant to Rule 12(b)(1) because the Court lacks subject matter jurisdiction to adjudicate the rights and interests of non-parties to the case.

11

Agreement by terminating Foster-Bey, that Foster-Bey be fully indemnified, and that he have no further liability to CSR. (*Id.* at 42-43.)[7]

Foster-Bey's request for relief is improper to the extent that it seeks guidance for conduct that has already occurred. Foster-Bey has asserted claims for breach of contract (regarding both the Bylaws and the Trust Agreement), and CSR has asserted claims for self-dealing and breach of fiduciary duty. Foster-Bey's indemnification claim and liability to CSR will not be determined until the Court resolves CSR's affirmative claims that have already survived Foster-Bey's Motion to Dismiss. Foster-Bey's declaratory judgment action is improper because the claims and rights asserted by the parties "have fully matured, and the alleged wrongs have already been suffered." *Hanback*, 94 F. Supp. 3d at 758. As such, Count I should be dismissed.

## II.    Foster-Bey Fails to State a Claim for Injunctive Relief.

In Count II, Foster-Bey purports to seek an injunction requesting a variety of relief. Foster-Bey asks the Court to enjoin CSR from "purporting to have removed and replaced Foster-Bey as Trustee of the CSR ESOP and ordering CSR to surrender control of the CSR ESOP to Foster-Bey." (Am. Countercl. at 45(1), ECF No. 68.) Similarly, Foster-Bey asks the Court to "enjoin" CSR from "refusing to recognize Foster-Bey, Hyman and Yates as current board members of the CSR Board." (*Id.* at 45(2)). Foster-Bey also seeks an injunction to enjoin "the current purported Trustee Neil from purporting to appoint Neil and Edgar as directors to the CSR Board" and to enjoin the sale of CSR. (*Id.* at 46(3)-(6)). Finally, Foster-Bey seeks an "injunction" to prevent CSR from "interfering with the payment of legal fees incurred by Foster-Bey" and an affirmative order to indemnify Foster-Bey. (*Id.* at 46(7)-(8)). Count II should be

---

[7] Foster-Bey appears to be recycling his arguments from his Motion to Dismiss and his Motion for Attorneys' Fees into Count I of the Amended Counterclaim.

dismissed because Foster-Bey fails to allege facts that would permit an injunction, and further because the requested relief is inappropriate.

### a. Foster-Bey Fails to Sufficiently Allege the Elements Required for a Preliminary Injunction.

A litigant "seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20; *see also Real Truth About Obama*, 575 F.3d at 345.[8]

### 1. Foster-Bey is Not Likely to Succeed on the Merits

To obtain a preliminary injunction, Foster-Bey must make a "clear showing" that he is "likely to succeed on the merits" of at least one of his claims at trial. *Northwest Fed. Credit Union v. SBC Fin., LLC*, No. 1:16cv1299, 2016 U.S. Dist. LEXIS 149329, at *10 (E.D. Va. Oct. 27, 2016) (quoting *Real Truth*, 575 F.3d at 345). As demonstrated herein, Foster-Bey has failed to state a claim for any of his other counts, let alone make the heightened "clear showing" of success as mandated under *Real Truth*. Therefore, Count II should be dismissed.

### 2. Foster-Bey Failed to Sufficiently Allege Irreparable Harm

Foster-Bey's request for injunctive relief should be denied because he has not and cannot allege true irreparable harm. Foster-Bey's claim for irreparable harm falls into two categories: (1) loss of employment at CSR; and (2) damage to the ESOP and loss of business development *to CSR*. (Am. Countercl. ¶¶ 172-173, 176, ECF No. 68.) The former does not constitute irreparable harm, and the latter, to the extent that it does qualify as irreparable harm, is harm to

---

[8] Although unclear from the pleading, it appears that Foster-Bey is seeking a preliminary injunction rather than a permanent injunction because he seeks relief during the pendency of the suit, i.e. enjoin the future sale of CSR. In any event, Foster-Bey fails to state a claim for any type of injunctive relief.

*CSR and the Plan participants,* rather than harm to Foster-Bey. In either event, Count II should be dismissed.

First, removal or dismissal from employment, <u>including removal from a corporate board position</u>, "does not constitute irreparable harm." *Walsh v. Northrop-Grumman Corp.*, 871 F. Supp. 1567, 1571 (E.D.N.Y. 1994) (citing *Savage v. Gorski*, 850 F.2d 64, 68 (2d Cir. 1988) (holding that dismissed employee can be made whole by money damages)); *see also Lieberman v. Husted*, 900 F. Supp. 2d 767, 781 (S.D. Ohio 2012) (refusing to find irreparable harm stemming from damages resulting from plaintiffs removal of their board positions) (citing *Sampson v. Murray*, 415 U.S. 61, 92 (1974)). Foster-Bey's allegations of irreparable harm are simply that he was improperly terminated from CSR. Such allegations are insufficient to warrant injunctive relief.

Second, any potential damage to the ESOP and loss of business development to CSR is speculative, and more importantly, would be damage to *CSR and the Plan participants*, and not to Foster-Bey. Foster-Bey has not alleged, nor could he, how he has standing as a private individual to seek to enjoin potential harm to CSR, a separate entity. *See Real Truth*, 575 F.3d at 346-47. In any event, the alleged hypothetical damage to CSR and the ESOP is speculative at best, and therefore insufficient to justify injunctive relief. *See Holbrook v. Univ. of Virginia*, 706 F. Supp. 2d 652, 655 (W.D. Va. 2010); (*see also* Nov. 23, 2016 Or. at 2, ECF No. 47 (<u>Court finding</u> that Foster-Bey's "concern that CSR's Board may take actions detrimental to the company is **speculative at best**") (emphasis added)).

Foster-Bey cannot state a claim for injunctive relief because he has not sufficiently alleged the irreparable injury in the absence of an injunction, and consequently, Count II should be dismissed.

### 3. The Balance of the Equities Tip in CSR's Favor.

The equities in this case weigh heavily in favor of CSR. Foster-Bey is essentially seeking to preclude CSR's Board from operating the company and exercising its discretion as prescribed in the Bylaws. There is no justification for Foster-Bey's interference in the day-to-day operations of the CSR Board, and CSR has done nothing but continue to operate pursuant to this Court's orders and its governing documents, and for the benefit of the participants and beneficiaries of the ESOP. Equity does not favor Foster-Bey's improper tactics launched in an attempt to disrupt lawful actions taken by the CSR Board, and Count II should be dismissed.

### 4. Injunctive Relief Requested by Foster-Bey is Not in the Public Interest.

Foster-Bey's injunction would interfere with CSR's ability to carry out its day-to-day business activities and would have a chilling effect on the Board's ability to govern the corporation. Indeed, Foster-Bey even seeks to enjoin the sale or purchase of CSR pending the litigation. Thus, issuing an injunction against CSR is not in the public interest.

The Supreme Court has stated that "courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of an injunction." *Winter*, 555 U.S. at 24 (citation omitted). It is in the public interest to allow CSR, a government services provider, to continue to prosper and operate its business without unjustified interference.

The public also benefits because CSR is wholly owned by the ESOP. The ESOP would be endangered if CSR is forced to keep directors on the Board that a majority of the Board found not to be in the best interest of the company. Foster-Bey's insistence on reappointing Yates and Hyman to the Board, therefore, would harm the ESOP and its participants and beneficiaries, which is not in the public's interest. *See Quesenberry v. Volvo Group N. Am., Inc.*, 1:09cv00022, 2009 U.S. Dist. LEXIS 22468, at *52 (W.D. Va. Mar. 10, 2009) (citing *McGlothlin v. Connors*,

142 F.R.D. 626, 624 (W.D. Va. 1992) (recognizing the public interest in protecting participants in employee benefit plans).

Foster-Bey's request for injunctive relief is also tantamount to specific performance of an employment agreement. Courts routinely "prefer to avoid the friction that would be caused by compelling an employer to hire or retain someone against their wishes." *Katz v. Georgetown Univ.*, No. 00-02412, 2000 U.S. Dist. LEXIS 23399, at *23 (D.D.C. Nov. 6, 2000) (citing *Hopkins v. Price Waterhouse*, 920 F.2d 967, 980 (D.C. Cir. 1990)). Thus, it would be against the public interest to order some type of "specific performance" remedy as it relates to the Bylaws and Trust Agreement.

### b. Foster-Bey's Requested Relief is Inappropriate.

Foster-Bey fails to state a claim under Count II because his various requests for injunctive relief are not related to his other asserted claims. In some instances, Foster-Bey requests that the Court order CSR to "surrender control" of CSR to Foster-Bey, and in other instances Foster-Bey seeks to enjoin the "sale or purchase" of CSR. Such remedies are not related to Foster-Bey's claim for breach of contract or indemnification and, as such, they are inappropriate. *See Hatlen v. Walsh*, No. 3:12cv00534, 2014 U.S. Dist. LEXIS 131186, at *5 (D. Nev. June 16, 2014) ("a request for injunctive relief in this action must be related to the claims proceeding in this action") (citing *Little v. Jones*, 607 F.3d 1245, 1250-51 (10th Cir. 2010); *Colvin v. Caruso*, 605 F.3d 282, 299-300 (6th Cir. 2010); *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997) ("a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint")).

Foster-Bey's prayer for relief under Count II is simply a free-standing list of demands that have no relation to whether or not CSR properly removed Foster-Bey from the company. As such, Count II should be dismissed.

### III.  Foster-Bey Cannot State a Claim for Breach of Contract Under the CSR Bylaws.

In Count III, Foster-Bey alleges that CSR breached the Bylaws by failing to provide proper notice before terminating Foster-Bey from his various positions at CSR. Foster-Bey seeks a litany of relief ranging from reinstating Foster-Bey in his positions at CSR, to prohibiting the Board from selling CSR. (Am. Countercl. at 49, ECF No. 68.) The facts alleged in the Amended Counterclaim and attachments thereto reveal that CSR properly terminated Foster-Bey. Beyond that fact, reinstatement is not an available remedy under District of Columbia law. Count III should be dismissed.

To state a claim for breach of contract under District of Columbia law,[9] a plaintiff must allege "(1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) a breach of that duty, and (4) damages caused by that breach." *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009) (citation omitted).

District of Columbia law does not allow for reinstatement as an available remedy for breach of contract. *See Hopkins v. Price Waterhouse*, 920 F.2d 967, 980 (D.C. 1990) ("courts have refused to order employers to reinstate employees as a remedy for the breach of an employment contract") (citing *Zannis v. Lake Shore Radiologists, Ltd.*, 392 N.E.2d 126, 128-29 (Ill. 1979); *Fitzpatrick v. Michael*, 177 Md. 248, 254-56 (1939); *Sprunt v. Members of the Bd. of Trustees*, 443 S.W.2d 464, 466 (Tenn. 1969)). Indeed, "under traditional principles of contract law the ordinary rule is that employees are not entitled to specific performance against employers

---

[9] Foster-Bey mistakenly assumes that Virginia law governs the Bylaws.

who, by discharging them, breach employment contracts." *Katz v. Georgetown Univ.*, No. 00-02412, 2000 U.S. Dist. LEXIS 23399, at *23-24 (D.D.C. Nov. 6, 2000) (quoting *Heheman v. E.W. Scripps Co.*, 661 F.2d 1115, 1125 (6th Cir. 1981)).

### a. CSR Did Not Violate the Bylaws When it Terminated Foster-Bey.

The allegations reveal that CSR terminated Foster-Bey in accordance with the Bylaws. The Board notified Foster-Bey that CSR intended to terminate him at the September 12, 2016 meeting. (Am. Countercl. ¶¶ 38, 57-65; Ex. C, ECF No. 68.) The Board subsequently issued a Memorandum on September 13, 2016, regarding issues that they intended to address at the next meeting scheduled for September 19, 2016. (*Id.* Ex. C.) Foster-Bey and his counsel appeared at the September 19, 2016 meeting and did not raise an objection to the notice he was provided. (See *id.* ¶¶ 85-89.) Foster-Bey was again notified of the Board's intent to terminate him if he did not comply with their requests in the Memorandum and the parties' respective counsel agreed to engage in discussions to attempt to resolve the matter. (*Id.* ¶¶ 85-89; Exs. C, E.) Shortly thereafter, the Board sent Foster-Bey a formal notice memorializing their decision to terminate him from CSR. (*Id.* ¶¶ 96, 110-111, Ex. E.)

Foster-Bey was terminated in accordance with the Bylaws. Foster-Bey was provided sufficient notice of the date and topic of the meeting scheduled for September 19, 2016, and essentially provided a written agenda pursuant to the September 13 Memorandum. Foster-Bey even arrived with counsel. Even assuming that this was not sufficient notice under the Bylaws, Foster-Bey waived any objection to any deficient notice by attending the meeting, with counsel, and not raising the issue. A majority of the Board then subsequently terminated Foster-Bey with formal termination notices. (*See id.* Ex. E.) CSR's termination was in accordance with the Bylaws. (*See id.* Ex. A, §§ 4.3, 4.11, 5.2.)

Foster-Bey attempts to rewrite the Bylaws to include more formal requirements for termination. The Bylaws, however, do not include any "magic words" or any rigid procedures that were neglected by the Board. (*See id.* Ex. A.) The Board's action was sufficient to terminate Foster-Bey, no breach of the Bylaws has been alleged, and Count III should be dismissed.

### b. Reinstatement is Not an Available Remedy.

Count III should also be dismissed, in large part, because the requested relief is improper and unavailable for breach of contract of corporate Bylaws. Foster-Bey lists several inappropriate remedies such as reinstatement as President, CEO, and Board Member, as well as reinstatement as the ESOP Trustee, reinstatement to the CSR Board of non-parties Yates and Hyman, injunctive relief against non-parties Neil and Edgar, injunctive relief prohibiting the sale of CSR, and an order of indemnification from CSR to Foster-Bey. (Am. Countercl. at 48-49, ECF No. 68.) The foregoing relief is improper for a breach of contract claim and is completely unrelated to Foster-Bey's alleged improper termination.

Foster-Bey's requests for reinstatement as President, CEO and Board Member should be dismissed because District of Columbia law does not permit reinstatement as an available remedy for breach of contract. *See Hopkins*, 920 F.2d at 980 (citations omitted); *Katz*, 2000 U.S. Dist. LEXIS 23399 at *23-24 (citations omitted). Foster-Bey's request for the reinstatement of Yates and Hyman fails for similar reasons, and should also be dismissed because they are not parties to the litigation. *See id.* Foster-Bey's claim for indemnification should fail because it is superfluous to Count V[10], and also because CSR's indemnification of Foster-Bey has no relation whatsoever to Foster-Bey's termination. Foster-Bey's request for injunctive relief, thinly veiled as a request for relief from an alleged breach of contract, should be dismissed for the reasons

---

[10] The request also fails for the reasons articulated herein as it relates to Count V.

stated herein as it relates to Count II, and also because the injunctive relief as it relates to Neil and the sale of CSR is not related to Foster-Bey's alleged improper termination.

Count III should be dismissed because CSR complied with the Bylaws when it terminated Foster-Bey as President, CEO and Board Member, and should further be dismissed because the requested relief is improper and unavailable.

## IV.    Foster-Bey Fails to State a Claim for Breach of the Trust Agreement

In Count IV, Foster-Bey claims that CSR breached the Trust Agreement. Foster-Bey alleges that CSR removed Foster-Bey "without having complied with all requirements of the Trust Agreement and CSR Bylaws," refused to indemnify Foster-Bey and compensate Foster-Bey's counsel despite the pendency of CSR's ERISA claims, and did not permit Foster-Bey to perform his duties under Section 5.3 of the Trust Agreement. (Am. Countercl. ¶¶ 191-204, ECF No. 68.)

It is well-established in Virginia that the "elements of a claim for breach of contract are (1) a legally enforceable obligation of a defendant to a plaintiff, (2) the defendant's violation or breach of the obligation, and (3) an injury or harm to the plaintiff caused by the defendant's breach." *Informatics Applications Group, Inc. v. Shkolnikov*, 836 F. Supp. 2d 400, 418 (E.D. Va. 2011) (citing *Ulloa v. QSP, Inc.*, 271 Va. 72, 79 (2006)).

### a.    CSR Did Not Violate the Trust Agreement When it Terminated Foster-Bey.

Similar to Count III, the allegations in Count IV reveal that CSR terminated Foster-Bey as Trustee of the ESOP in accordance with the Trust Agreement. The decision to remove Foster-Bey as Trustee was determined at a duly constituted meeting by a majority of the Board. (*See* Am. Countercl. ¶¶ 85-89, 110-111, Exs. C, E, ECF No. 68.) The Board also provided Foster-Bey with satisfactory written evidence of the successor Trustee – Neil. (*See id.* Ex. E; *see also* Ex. 1.)

Foster-Bey apparently does not challenge that CSR provided Foster-Bey with the required 30-days' written notice. (*Id.* ¶¶ 196-197 ("On or about September 26, 2016, [] CSR purported to give Foster-Bey 30-days' written notice of his removal from his position as Trustee")). Accordingly, Foster-Bey was terminated as ESOP Trustee effective October 26, 2016. (*See id.* Exs. A, B.)

### b. CSR Did Not Violate the Trust Agreement By Not Indemnifying Foster-Bey.

Foster-Bey also claims that CSR violated the Trust Agreement by "blocking Foster-Bey's attempts to retain and compensate legal counsel from Trust assets in the defense of the instant litigation..." (Am. Countercl. ¶ 202, ECF No. 68.) Essentially, Foster-Bey alleges that CSR has breached the Trust Agreement by not indemnifying Foster-Bey for his personal legal expenses during the pendency of the litigation. (*Id.* ¶¶ 202-204.)

This issue was already briefed and decided by the Court in its December 9, 2016 Order when the Court denied Foster-Bey's Motion for Attorneys' Fees pursuant to Rule 54(d). (Dec. 9, 2016 Or., ECF No. 59.) CSR was not, and currently is not, under any obligation to pay Foster-Bey's attorneys pursuant to the Trust Agreement. Further, an award of indemnification from CSR to Foster-Bey, if any, must be an element of damages proven at trial. *See Carolina Power & Light Co. v. Dynergy Mktg & Trade*, 415 F.3d 354, 356 (4th Cir. 2005), *abrogated in part by Ray Haluch Gravel Co. v. Cent. Pension Fund of the Int'l Union of Operating Eng'rs*, 134 S. Ct. 773, 779 (U.S. 2014) (citing Fed. R. Civ. P. 54(d)(2) ("a claim for legal costs based on a contractual provision that is not limited to expenses incurred during the underlying litigation is an element of damages to be proved at trial under the substantive law governing the action...")); *Kraft Foods N. Am., Inc. v. Banner Eng'g & Sales, Inc.*, 446 F. Supp. 2d 551, 578 (E.D. Va. 2006) (referring to Rule 54) ("Where attorney's fees are an element of damages, such as in an

indemnification clause, the award of attorneys' fees should be denied where the party seeking them fails to carry its burden of proof at trial"); *KnightBrook Ins. Co. v. Payless Car Rental Sys.*, No. CV-12-01671, 2015 U.S. Dist. LEXIS 86545, at *5-6 n.1 (D. Ariz. July 1, 2015) (citations omitted) (interpreting Rule 54(d)) ("Fees sought as indemnification damages must be proved at trial")). Although it may be possible[11] for Foster-Bey to be indemnified at some future point if he prevails at the trial, the Trust Agreement provides no basis for Foster-Bey to be indemnified *during* the litigation. To date, there is no basis for Foster-Bey's claim for breach of contract, as there is no obligation which has been breached. This is especially true considering that Foster-Bey currently faces multiple claims for ERISA violations.

### c. Foster-Bey's Remaining Relief Under Count IV is Improper.

In Count IV, Foster-Bey again seeks relief that is unavailable and inappropriate. In Count IV, Foster-Bey asks the Court to "direct CSR to allow Foster-Bey to fulfill his duties" under Section 5.3 of the Trust Agreement. Foster-Bey also asks the Court to "direct" the appointment of Yates and Hyman. Foster-Bey is once again asking for injunctive relief against CSR and for remedies relating to individuals who are not before the Court. Such relief is inappropriate for Foster-Bey's alleged breach of the Trust Agreement and must be dismissed.

### V. Foster-Bey's Indemnification Claim Fails Because It Has Not Accrued.

In Count V, Foster-Bey alleges a claim for indemnification against CSR stemming from his defense of CSR's Complaint. Foster-Bey requests the Court to order CSR to pay Foster-Bey his attorneys' fees and costs through October 27, 2016, and for all other attorneys' fees and costs incurred through the defense of the lawsuit. Absent from the Amended Counterclaim are any

---

[11] CSR denies any obligation to indemnify Foster-Bey under the Trust Agreement.

allegations that Foster-Bey has actually paid his attorneys' fees or costs to date. The claim for indemnification is premature and the cause of action has not accrued.

Section 8.01-281 of the Virginia Code "provides the right to bring an action for indemnification and contribution not otherwise accrued to '*a party.*'" *Virginia Int'l Terminals v. Ceres Marine Terminals*, 879 F. Supp. 31, 32 (E.D. Va. 1995) (citing Va. Code § 8.01-281). In this context, a "party":

> is a technical word having a precise meaning in legal parlance; it refers to those by or against whom a legal suit is brought, whether in law or in equity, the party plaintiff or defendant, whether composed of one or more individuals and whether natural or legal persons; all others who may be affected by the suit, indirectly or consequently, are persons interested but not parties.

*Virginia Int'l Terminals*, 879 F. Supp. at 32-33 (quoting *Golatte v. Matthews*, 394 F. Supp. 1203, 1207 n.5 (M.D. Ala. 1975) (quoting Black's Law Dictionary 1010 (6th ed. 1990)). Thus, the Virginia Code authorizes "a party in a pending action to file a third-party motion for judgment (complaint) seeking indemnification or contribution." *Virginia Int'l Terminals*, 879 F. Supp. at 33. However, when "a claim for indemnity . . . is filed as a *separate cause of action*, it does not accrue until the person seeking the relief has paid more than his or her share of the obligation." *Id.* (granting motion to dismiss indemnification claim as separate cause of action where it had not accrued); *see also* Va. Code 8.01-249(5) (stating that a cause of action does not accrue "[i]n actions for contribution of indemnification, [until] the contributee or the indemnitee has paid or discharged the obligation"); *see also Gemco-Ware, Inc. v. Rongene Mold & Plastics Corp.*, 234 Va. 54, 57 (1987) ("In other words, the right to recover contribution arises upon payment or discharge of the common obligation . . .") (citations omitted).

Considering that Foster-Bey made a claim for indemnification as a separate count in his Counterclaim and that Foster-Bey has not paid (or alleged that he has paid the obligation) the amount that he requests CSR to indemnify, the claim is premature and should be dismissed.

## Conclusion

For the foregoing reasons, and those articulated at oral argument, CSR respectfully requests that the Court grant the Motion to Dismiss and award CSR any and all further relief as this cause my require.

Respectfully submitted,

*/s/ Jennifer A. Brust*
Jennifer A. Brust, Esq., VSB No. 29707
Stephen D. Caruso, Esq., VSB No. 87376
Bean, Kinney & Korman, P.C.
2300 Wilson Boulevard, 7th Floor
Arlington, VA 22201
(703) 525-4000
(703) 525-2207 (Fax)
jbrust@beankinney.com
scaruso@beankinney.com
*Counsel for Plaintiff/Counter-Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFIY that on the 13th day of February, 2017, I electronically filed the foregoing Memorandum of Points and Authorities in Support of the Motion to Dismiss with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Robert Flores, Esq.
Scott J. Ward, Esq.
Christine Lambrou Johnson, Esq.
Gammon & Grange, P.C.
8280 Greensboro Drive, 7th Floor
McLean, VA 22102
jrf@GG-Law.com
sjw@GG-Law.com
clj@GG-Law.com
*Counsel for Defendant/Counter-Plaintiff*

*/s/ Jennifer A. Brust*
Jennifer A. Brust