IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

CSR, INCORPORATED, in its           )
corporate capacity and in its       )
capacity as fiduciary of the        )
CSR, Incorporated Employee          )
Stock Ownership Plan.               )
                                    )
        Plaintiff,                  )
                                    )
        v.                          )    1:16cv1227 (JCC/IDD)
                                    )
JOHN FOSTER-BEY,                    )
                                    )
        Defendant.                  )
                                    )

### **M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Plaintiff CSR, Incorporated's Motion to Dismiss [Dkt. 77] Defendant John Foster-Bey's Amended Counterclaims. For the reasons that follow, the Court will deny Plaintiff's Motion.

### **I. Background**

The following allegations of fact from Foster-Bey's Counterclaims are taken as true for purposes of Plaintiff's Motion. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

Foster-Bey has served as CEO and President of CSR, as well as Trustee of CSR's Employee Stock Ownership Plan (ESOP), since December of 2011. Am. Counterclaim [Dkt. 75] ¶ 8. In

2012, he was made a member of CSR's Board of Directors. *Id.* Under Foster-Bey's leadership, CSR returned from near-insolvency to "profitability and a strong balance sheet." *Id.* ¶¶ 12-13.

In 2013, Foster-Bey appointed Thomas Edgar and Robert Neil to CSR's Board. *Id.* ¶ 16. He appointed Cynthia Marsden to the Board in 2015. *Id.* The terms of Neil and Edgar were, by resolution, set to expire on September 30, 2016, while Marsden's term is due to expire September 30, 2017. *Id.* ¶ 17.

From 2013 on, Foster-Bey "spent a significant amount of time on business development" and successfully grew CSR's business. *Id.* ¶¶ 18-20. In April of 2015, however, Foster-Bey became ill and was forced to take a leave of absence for several weeks, during which he worked from the hospital. *Id.* ¶ 23. Upon being discharged from the hospital, Foster-Bey's doctor cautioned him that he should work from home to the extent possible – a practice Foster-Bey had generally permitted among his employees. *Id.* ¶¶ 24-25. Upon learning of Foster-Bey's plans to work from home, Neil and Edgar first suggested that Foster-Bey retire, then insisted that he take another month away from the office, during which Foster-Bey worked from home. *Id.* ¶¶ 26-27.

After this incident, Foster-Bey became concerned that Neil and Edgar were attempting to pressure him to quit – a concern that grew acute after those two Board members attempted

2

to reduce Foster-Bey's annual bonus by half without good cause. *Id.* ¶¶ 29-36. Foster-Bey's suspicions were substantiated when the other Board members attempted to oust him from his various positions at CSR.

After meeting in secret, the outside Board members sent Foster-Bey an email on September 7, 2016 asking him to attend a special Board meeting regarding "Business Development and Corporate governance." *Id.* ¶¶ 38-39, 47-52. After a cryptic email exchange, Foster-Bey grew concerned about the meeting and sought advice from CSR's legal counsel regarding the process for dissolving the Board. *Id.* ¶¶ 49-54. Counsel for CSR, however, declined to provide legal advice, as he deemed the issue a dispute between management and the Board. *Id.* ¶¶ 54-56.

Foster-Bey attended the special Board meeting on September 12, 2016, and was surprised to learn that the subject of the meeting was the Board's decision to remove him from his various positions at CSR over "business development" concerns. *Id.* ¶¶ 57-60. Foster-Bey pointed out his successes in business development and suggested that the Board provide him with specific benchmarks for business development. *Id.* ¶¶ 63-64. The Board agreed to provide a memo outlining their expectations, and the meeting concluded without the Board taking any action or setting a future meeting date. *Id.* ¶¶ 65-67.

3

The Board sent Foster-Bey the promised memorandum several days later. *Id.* ¶ 69. Among other things, it required that Foster-Bey reappoint Edgar and Neil as Board members upon the expiration of their membership terms – a provision Foster-Bey deemed a bridge too far. *Id.* ¶¶ 72-73. In light of this and the Board's other irregular activities, Foster-Bey appointed two new Board members to replace Edgar and Neil – Garland Yates and James Hymen. *Id.* ¶¶ 74-75.

Meanwhile, Foster-Bey thought it best in light of the September 12 meeting to cancel an appointment scheduled for September 19, 2016, during which Foster-Bey was to meet with "two newly retained business development consultants." *Id.* ¶¶ 77-79. Upon learning that the meeting was cancelled, Edgar protested and asked in an email dated September 18, 2016, that Foster-Bey meet with the entire Board the following day. *Id.* ¶ 79. Foster-Bey was not provided with any notice regarding what the topic of the meeting would be. *Id.* ¶ 80. In light of all that had come before, Foster-Bey retained independent counsel and wrote letter informing Edgar and Neil that they would be replaced as Board members, mistakenly believing their terms to have already run. *Id.* ¶¶ 82-84.

Foster-Bey appeared at the September 19, 2016 meeting with counsel and provided Edgar and Neil with the letters he had written. *Id.* ¶¶ 85-86. At the meeting, counsel for Foster-Bey

4

discussed the situation with counsel for Plaintiff, but they were unable to reach a resolution and agreed to speak again at a later date. *Id.* ¶ 86. The meeting ended without the Board having taken any action. *Id.* ¶¶ 88-89.

On September 21, 2016, the Board sent Foster-Bey notices of termination regarding his positions as CEO and Board member of CSR through counsel. *Id.* ¶ 96. Several days later, on September 26, 2016, the Board communicated that those notices had become effective, and that Foster-Bey would additionally be terminated from his position as Trustee of CSR's ESOP. *Id.* ¶¶ 110-14. At no point was a Board meeting formally convened at which Foster-Bey's termination from his various positions was discussed and decided upon. *Id.* ¶¶ 99-105, 112-14. Since that time, Foster-Bey has been effectively frozen out of CSR's operations. *Id.* ¶¶ 141-45.

On October 14, 2016, after the expiration of Edgar's and Neil's terms as Board members, Foster-Bey convened a Board meeting with Hymen and Yates. *Id.* ¶¶ 115-18. At the meeting, which Marsden did not attend, the Board members present voted to rescind the various actions of the previous Board with respect to Foster-Bey's employment as a precaution. *Id.* ¶¶ 119-25. On November 22, 2016, Marsden, Neil, and Edgar held a competing Board meeting at which they purported to remove Hymen and Yates from the Board. *Id.* ¶¶ 132-40.

5

## II. Legal Standard

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; importantly, [a Rule 12(b)(6) motion] does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999) (citation omitted). In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint," drawing "all reasonable inferences" in the nonmoving party's favor. *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440 (citations omitted). Generally, the Court may not look beyond the four corners of the complaint in evaluating a Rule 12(b)(6) motion. *See Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).

## III. Analysis

### A. Jurisdiction over Foster-Bey's Counterclaims

Although neither party raises the issue, the Court must first satisfy itself that it may exercise jurisdiction over Foster-Bey's counterclaims. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("subject-matter delineations must be policed by the courts on their own initiative"). All of Foster-Bey's counterclaims arise under state law – specifically, breach

of contract related to CSR's various governing documents.[1]  Had Foster-Bey brought these claims in a freestanding lawsuit, this Court would lack subject matter jurisdiction over them, as there is not complete diversity of citizenship and Foster-Bey's claims do not arise under federal law.

"In cases such as this one, where neither diversity nor federal question jurisdiction exists over defendant's counterclaims, the counterclaims' status as 'compulsory' or 'permissive' determines whether the court has jurisdiction over them."  *Williams v. Long*, 558 F. Supp. 2d 601, 602-03 (D. Md. 2008).  The Court may exercise supplemental jurisdiction over a compulsory state-law counterclaim, but "a permissive counterclaim that lacks its own independent jurisdictional basis is not within the jurisdiction of the court."  *Id*. at 603.

Having reviewed Foster-Bey's counterclaims, the Court is satisfied that they are compulsory rather than permissive, and thus that the Court may exercise jurisdiction over them.  The Fourth Circuit has "suggested four inquiries to determine if a counterclaim is compulsory: (1) Are the issues of fact and law raised in the claim and counterclaim largely the same? (2) Would

---

[1]    The fact that Foster-Bey invokes the Declaratory Judgment Act does not mean that his counterclaims arise under federal law.  *Schilling v. Rogers*, 363 U.S. 666, 677 (1960) ("[T]he Declaratory Judgments Act is not an independent source of federal jurisdiction; the availability of such relief presupposes the existence of a judicially remediable right.") (citations omitted).

7

res judicata bar a subsequent suit on the party's counterclaim, absent the compulsory counterclaim rule? (3) Will substantially the same evidence support or refute the claim as well as the counterclaim? and (4) Is there any logical relationship between the claim and counterclaim?" *Painter v. Harvey*, 863 F.2d 329, 331 (4th Cir. 1988). Here, the answer to each inquiry is self-evidently "yes." The Court therefore does not belabor the point.

### B. Foster-Bey's Claims for "Injunction" and "Declaratory Judgment"

Plaintiff moves to dismiss Foster-Bey's requests for injunctive and declaratory relief. The Court declines to reach the issue of what remedies might be appropriate at this stage in the proceedings.

First, the question of whether Foster-Bey is entitled to an injunction is not at this time properly before the Court. When evaluating a Complaint under Rule 12(b)(6), the Court asks only whether the Complaint's allegations, if assumed to be true and drawing all reasonable inferences in favor of the non-moving party, state a claim upon which relief can be granted. *See E.I. du Pont de Nemours & Co.*, 637 F.3d at 440. The Court does not, in ruling on such a motion, require more of a Complaint. Even if a party does ultimately seek injunctive relief, the Complaint need not demonstrate that injunctive relief is warranted at the

8

motion to dismiss stage by showing, for example, a likelihood of success on the merits or that the party in question will suffer irreparable harm. That simply is not the standard under Rule 12(b)(6). Whether an injunction may appropriately issue is a bridge to cross if and when an injunction is sought.

Of course, "injunctive relief is a remedy and not a cause of action and it is improper to frame a request for an injunction as a separate cause of action, as the complaint does in this case." *Dwoskin v. Bank of Am., N.A.*, 850 F. Supp. 2d 557, 573 (D. Md. 2012). The Court, however, declines to confuse the issue by dismissing Foster-Bey's "claim" for injunctive relief merely because it is set out in the wrong portion of his Counterclaims. To do so would work, at best, a cosmetic change to Foster-Bey's counterclaims.

Similarly, "[t]he Declaratory Judgment Act . . . does not create a substantive cause of action." *Dallas Cty., Tex. v. MERSCORP, Inc.*, 2 F. Supp. 3d 938, 945 (N.D. Tex. 2014), *aff'd sub nom. Harris Cty. Texas v. MERSCORP Inc.*, 791 F.3d 545 (5th Cir. 2015); *see also id* (citing cases). Whether and to what extent Foster-Bey is entitled to declaratory relief will turn largely on the degree of his success with respect to his substantive breach of contract claims. Regardless, as Plaintiff appears to acknowledge, at least some aspects of this case are amenable to declaratory relief. Plaintiff itself seeks a

declaratory judgment that Foster-Bey was validly terminated from his various positions at CSR and no longer serves as CEO, Board Member, or Trustee. *See* Compl. [Dkt. 1] ¶¶ 40-45. It is therefore difficult to see how Plaintiff can contend it is improper for Foster-Bey to seek a declaratory judgment that he was *not* validly terminated from his various positions at CSR and *remains* CEO, Board Member, and Trustee.

The Court notes, however, that many of the remedies Foster-Bey seeks may be unavailable to him should he proceed in this matter without joining Neil, Edgar, and Marsden as counterclaim defendants. Plaintiff correctly points out that Foster-Bey's counterclaims seek relief directly against those individuals, who at this point are not before the Court. Foster-Bey requests, for example, an injunction that forbids "purported Trustee Neil from purporting to appoint Neil and Edgar as directors to the CSR Board." Am. Counterclaims [Dkt. 75] at 45. Similarly, he seeks a declaratory judgment that addresses the lawfulness of the actions undertaken by Neil, Edgar, and Marsden, and that declares what positions, if any, are held by these individuals at CSR. *See id.* at 41-42. It is unclear how the Court would be justified in enjoining the behavior and declaring the rights of these individuals who are not before the Court. *See, e.g.*, *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 110 (1968) ("[S]ince the

outsider is not before the court, he cannot be bound by the judgment rendered.").

Foster-Bey insists these individuals may be bound through a judgment against CSR itself. This argument is puzzling, particularly in light of Foster-Bey's insistence that neither Neil nor Edgar holds any lawful position at CSR. Foster-Bey attempts to justify his position by reference to *Wencoast Restaurants, Inc. v. Chart Capital Partners, L.P.*, No. 2:05-1650-18, 2006 WL 490101 (D.S.C. Feb. 28, 2006). The Court agrees that *Wencoast* appears quite similar to this case, but the comparison does little to shed light on Plaintiff's reasoning. As in this case, both parties in *Wencoast* maintained that they retained rightful control of the company at issue. *See id.* at *1. For that reason, however, "[b]oth parties . . . filed . . . actions in the name of" the company against the alleged usurper. *Id.* at *1. Neither maintained the action against the company they claimed to control. It remains unclear to the Court why Foster-Bey has not done the same. While the Court does not at this time *sua sponte* order that Neil, Edgar, and Marsden be joined pursuant to Federal Rule of Civil Procedure 19, it does note the possibility that it may become apparent at some stage of this litigation that "the court cannot accord complete relief among existing parties" absent those parties. Fed. R. Civ. P. 19(a)(1)(A).

## C. Foster-Bey's Claims for Breach of Contract

"It is well established that the formal bylaws of an organization are to be construed as a contractual agreement between the organization and its members, since the continuing relationship between the organization and its members manifests an implicit agreement by all parties concerned to abide by the bylaws." *Meshel v. Ohev Sholom Talmud Torah*, 869 A.2d 343, 361 (D.C. 2005); *see also Rosenberg v. AT & T Employees Fed. Credit Union*, 726 F. Supp. 573, 578 (D.N.J. 1989) ("It is well settled under common law that bylaws generally act as a contract between a corporation and its shareholders. Thus, a breach of a corporation's bylaws gives rise to an action for breach of contract."). "To prevail on a claim of breach of contract" under DC law, which governs CSR's bylaws, "a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009).[2]

---

[2] The elements of breach of contract under Virginia law, which governs CSR's Employee Stock Ownership Agreement, are essentially the same. *See Informatics Applications Grp., Inc. v. Shkolnikov*, 836 F. Supp. 2d 400, 418 (E.D. Va. 2011) ("In Virginia, the elements of a claim for breach of contract are (1) a legally enforceable obligation of a defendant to a plaintiff, (2) the defendant's violation or breach of the obligation, and (3) an injury or harm to the plaintiff caused by the defendant's breach.").

Plaintiff first contends that Foster-Bey's breach of contract counterclaim should be dismissed because it seeks reinstatement – a remedy not available under DC law. *See, e.g., Hopkins v. Price Waterhouse*, 920 F.2d 967, 980 (D.C. 1990). Foster-Bey's counterclaims do in fact request an order "reinstating" Foster-Bey to his various positions, which would not be proper.

Foster-Bey first contends that reinstatement is an available remedy here because "there is no employment contract in this case." Opp. [Dkt. 81] at 10. It is not clear, however, why reinstatement would be available as a remedy for breach of a contract claim as long as the contract in question is not formally an "employment contract," but merely a contract respecting employment. Regardless, Foster-Bey's request for "reinstat[ement]" appears to reflect an inartful choice of words rather than the remedy Foster-Bey actually seeks. The Court understands the gravamen of Foster-Bey's counterclaim to be that he was *not* properly terminated, and that members of CSR's Board improperly and ineffectively purported to remove him from his various positions. Foster-Bey therefore does not seek reinstatement but rather recognition that he was not removed, and that CSR's Board violated CSR's bylaws. Such relief is not barred by DC law.

Evidently conceding that Foster-Bey has plausibly alleged that CSR's bylaws constitute a binding contract giving rise to a duty on the part of CSR's officers and Board members, Plaintiff argues next that Foster-Bey has not plausibly alleged that the outside Board members violated CSR's bylaws. Taking as true the allegations of Foster-Bey's counterclaims, however, the Court finds that Foster-Bey has in fact plausibly alleged a breach of CSR's bylaws.

Pursuant to Section 4.3 of CSR's bylaws, "[t]he act of the majority of the directors present at a meeting at which a quorum is present shall be the act of the board of directors." Mot. Exh. A [Dkt. 4-2] at 4. A Board meeting may be either a regular or special meeting. *See id*. at 3-4. A special meeting requires "written notice delivered to each director not less than three (3) days before such meeting." *Id*. at 4. A director waives the notice requirement by attending a meeting unless he or she does so "for the express purpose of objecting to the transaction of any business because the meeting is not lawfully called or convened." *Id*.

Section 4.11 of CSR's Bylaws states that "[a] director may be removed by a majority vote of the remaining directors at a regular meeting of the board or a specially called meeting where the purpose is clearly published to all directors." *Id*. at 5. Similarly, section 5.2 provides that "[a]ny officer or

14

agent elected or appointed by the board of directors may be removed by the board of directors whenever in its judgment the best interests of the Corporation will be served thereby." *Id*. at 5-6.

Foster-Bey alleges that, after the September 12, 2016 meeting at which the outside Board members raised the issue of Foster-Bey's future with CSR, Foster-Bey felt it necessary to cancel a meeting with "business development consultants" scheduled to take place September 19, 2016. Am. Counterclaim [Dkt. 75] ¶¶ 77-79. On September 18, 2016, Board member Edgar objected and, after an email exchange, requested that Foster-Bey meet with the full board the following day. *Id*. ¶ 79. The purpose of this meeting was not made known to Foster-Bey in advance. *Id*. ¶¶ 79-80. Foster-Bey alleges further that, at the September 19 meeting, the Board did not resolve to terminate Foster-Bey from his various positions. *Id*. ¶¶ 87-89.

Taking the above as true, the Board's subsequent decision to remove Foster-Bey from his various positions without a further meeting was not "[t]he act of the majority of the directors present at a meeting at which a quorum is present," in violation of section 4.3 of CSR's bylaws. Without a meeting, the Board was not able to take any action pursuant to that provision. Foster-Bey has therefore plausibly alleged that CSR's outside Board members failed to adhere to CSR's bylaws by

15

purporting to remove him from his positions with the company on September 26, 2016, and by thereafter preventing him from carrying out his roles at CSR.[3] Moreover, taking the above as true, and drawing all reasonable inferences in Foster-Bey's favor, the purpose of the September 19 meeting was not "clearly published" to Foster-Bey, such that he could be removed from his position on CSR's Board under Section 4.11 of CSR's bylaws during that meeting. Mot. Exh. A [Dkt. 4-2] at 5. While a director may waive any objection to the notice afforded of a special Board meeting by attending that meeting under Section

---

[3] The Court notes further that it is unclear whether CSR's bylaws are lawful insofar as they permit the Board to remove a director. CSR is incorporated in Washington, DC, and its bylaws are governed by DC law. DC law provides that directors may be removed before the expiration of their term in two ways: (1) a vote of the corporation's shareholders, or (2) an action brought in DC Superior Court. *See* D.C. Code § 29-306.08; 29-306.09. Courts construing similar laws have found that, unless specifically permitted by statute, a corporation's director may not otherwise be removed by a vote of the remaining directors. *See, e.g.*, *Murray v. Conseco*, Inc., 795 N.E.2d 454, 456–57 (Ind. 2003) ("[M]ost jurisdictions reserve the power to remove a member of the board to the shareholders who elected the director."); *Kurz v. Holbrook*, 989 A.2d 140, 157 (Del. Ch. 2010) ("For 89 years, Delaware law has barred directors from removing other directors."); *Laughlin v. Geer*, 121 Ill. App. 534, 539 (Ill. App. Ct. 1905) ("If the board of directors of a corporation organized under the laws of this state have not the power to remove a director duly elected and serving, it has no power to adopt a by-law for that purpose."). While Plaintiff argues that CSR's contrary bylaw may be upheld as a Shareholder agreement pursuant to D.C. Code § 29-305.42, the record does not clearly establish whether the bylaw meets the requirements of that provision. Regardless, as Plaintiff's allegations standing alone are sufficient to state a claim, the Court need not reach the issue at this point.

4.3 of CSR's bylaws, that does not mean the director waives any objection to a failure to publish the purpose of the meeting under Section 4.11 – a separate provision of CSR's bylaws with independent requirements.

Similarly, Foster-Bey has plausibly alleged that the outside Board Members breached CSR's Trust Agreement in purporting to terminate him from his position as Trustee of CSR's ESOP. Section 5.2 of CSR's Employee Stock Ownership Trust Agreement states that "[t]he Company may remove the Trustee by giving (30) days' advance written notice to the Trustee, subject to providing the removed Trustee with satisfactory written evidence of the appointment of a successor Trustee and of the successor Trustee's acceptance of the trusteeship." Mot. Exh. B. [Dkt. 4-3] at 8. The notice of termination here purported to be effective immediately, failing to provide Foster-Bey with the required 30 days' notice. Moreover, Foster-Bey alleges that the outside Board members sent him a notice of termination without having voted on the issue at the September 19 meeting, *see* Am. Counterclaim [Dkt. 75] ¶¶ 112-14, and thus the notice was again not the product of a proper corporate action under Section 4.3 of CSR's bylaws. In light of the above, Foster-Bey has plausibly alleged that CSR, Incorporated – through Neil, Edgar, and Marsden – breached both CSR's bylaws and CSR's Employee Stock Ownership Trust Agreement.

17

## D. Foster-Bey's Claims for Indemnification

Finally, Plaintiff contends that Foster-Bey's claim for indemnification should be dismissed because it has not yet accrued. Specifically, Plaintiff argues that Foster-Bey must show that he has already paid his attorney's fees before he is entitled to indemnification.

Plaintiff's argument fails to recognize the difference between indemnification against loss and indemnification against liability. Where a contractual term, such as the provision of the Trust Agreement at issue in this case, indemnifies a party against liability, the indemnification cause of action accrues when the indemnified party becomes subject to liability and the indemnifying party has not paid the amount due. *See Sectek, Inc. v. Diamond*, No. 1:15-CV-01631-GBL, 2016 WL 4445470, at *5 (E.D. Va. Aug. 19, 2016). The case upon which Plaintiff relies, *Virginia International Terminals, Inc. v. Ceres Marine Terminals, Inc.*, 879 F. Supp. 31 (E.D. Va. 1995), is, as one Virginia Court has explained, inapposite where the indemnity against liability doctrine applies and the claim for indemnity is just one among several claims. *See Jackson v. Quantrex Integrated Tech. Grp., Inc.*, 57 Va. Cir. 368, 2002 WL 220340, at *6-7 (2002). Here, Foster-Bey has incurred legal expenses that are fixed and owed. He need not pay any portion of those expenses before his cause of action for indemnity accrues.

## IV. Conclusion

For the above reasons, the Court will deny Plaintiff's Motion to Dismiss Foster-Bey's Amended Counterclaims. The Court will further require Plaintiff to file an answer to Defendant's Amended Counterclaims within fourteen (14) days.

An appropriate order will issue.

|  | /s/ |
|---|---|
| May 10, 2017 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |